JACQUELINE KRISTINA *et al.*, Plaintiffs-Appellants, *v.* ST. JAMES
HOSPITAL *et al.*, Defendants-Appellees.

First District (1st Division)   No. 77-1536

Opinion filed July 31, 1978.—Rehearing denied September 18, 1978.

Elsener & Kenneally, Chartered, of Chicago, for appellants.

Baker & McKenzie, of Chicago (Francis D. Morrissey, John W. Dondanville, and Charles B. Lewis, of counsel), for appellee St. James Hospital.

French and Rogers, of Chicago (Richard G. French and Michael C. Kominiarek, of counsel), for appellees Paul Ashley and Robert Jensen.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Jacqueline Kristina (plaintiff) appeals from the dismissal of her complaint against St. James Hospital, Dr. Paul Ashley and Dr. Robert Jensen (defendants). Plaintiff's husband, Michael, also appeals from the dismissal of his count against the same defendants for loss of consortium. The sole issue presented for review is whether plaintiff's claim is barred by the statute of limitations.

On April 28, 1971, surgery was performed on plaintiff for removal of her gallbaldder at St. James Hospital by Drs. Ashley and Jensen. Plaintiff was then 20 years old. She was a high school graduate, with no medical training. The following facts are taken from plaintiff's deposition which is the only statement in the record concerning these events.

On May 1, 1971, while still in the hospital, plaintiff developed jaundice. Dr. Ashley told her this condition could be caused by stone blockage of the common duct or by a reaction to a drug used during surgery. By May 5 the symptoms subsided to the extent that plaintiff was discharged from the hospital with directions to continue her convalescence at home. However, the jaundice worsened after her discharge. On May 17 she was readmitted to the same hospital. Dr. Ashley performed exploratory surgery of the common duct. After this surgery the symptoms disappeared. Plaintiff was released on June 7, 1971.

From June 1971 until February 1972 plaintiff was asymptomatic. Between February and June 1972 plaintiff had periodic fevers which she did not associate with her previous condition. On June 23, 1972, plaintiff noticed the jaundice symptoms were returning. She consulted Dr. Ashley who informed her that the jaundice could be caused by a stone or by the common duct "closing by itself." He suggested further exploratory surgery.

Plaintiff was readmitted to St. James Hospital on June 30, 1972, and on July 3, 1972, she was operated on by Dr. Governale with Dr. Ashley assisting. Dr. Governale had been recommended to plaintiff by Dr. Ashley. After the operation Dr. Governale told plaintiff that he had taken part of her intestine and "hooked it up." He did not indicate to her the cause of her condition. Shortly after the operation all symptoms disappeared and plaintiff was discharged.

Following this surgery plaintiff was again asymptomatic until May 1975. At that time she experienced pain on the right side of her body. In July 1975 jaundice again set in. On Dr. Governale's advice plaintiff entered the Mayo Clinic and subsequently underwent surgery on August 11, 1975. After the operation she was informed by the surgeon that her condition resulted from a blockage of the common duct caused by scar

tissue which formed or was left behind after plaintiff's initial surgery for removal of her gallbladder in April 1971.

Plaintiff and her husband filed this suit on October 24, 1975. Defendants moved to dismiss the action on the ground the suit was filed more than 2 years after plaintiff discovered, or should have discovered, her cause of action.[1] Defendants claimed that the latest date plaintiff knew or should have known of her cause of action was July 3, 1972, the date of surgery by Dr. Governale. Plaintiff, in her objection to the motion, claimed that it was not until August 1975, when she was told of the scar tissue, that she knew of her cause of action and that she could not reasonably have discovered it sooner.

This case turns upon the proper interpretation of the "discovery rule" announced by our supreme court in *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656, and applied to medical malpractice cases in *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 262 N.E.2d 450. Specifically, the question is whether the limitation period commences at the time the injured party discovers or should have discovered his condition, or at the time he discovers or should have discovered the cause of his condition.

Defendants contend that the limitation period commences when the condition becomes apparent to the injured party. They urge that plaintiff was aware that she was jaundiced shortly after her initial surgery in April 1971. Alternatively, they argue that plaintiff was aware at or near the time of her third operation on July 3, 1972, that her condition was caused by a blockage or obstruction in the common duct. Hence they claim the latest date for commencement of the limitation period is July 3, 1972.

Plaintiff contends that the period commences when the injured party discovers or should have discovered the wrongful cause of his injury. Plaintiff claims that she was not aware, nor could she reasonably have discovered, that defendants were responsible for her condition prior to her being so informed in August of 1975.

■■ We have examined the cases presented by the parties. In our opinion, the reasoning in *Roper v. Markle* (1978), 59 Ill. App. 3d 706, 375 N.E.2d 934, is persuasive. That case presents a thorough review of the decisions in this State on this issue. (See also *The Evolution of Illinois Tort Statutes of Limitation: Where are We Going and Why?*, 53 Chi.-Kent L. Rev. 673 (1977).) The court in *Roper* concluded that the statute of limitations commences when the injured party discovers or should reasonably have discovered not only the nature of the affliction but also that it was wrongfully caused.

---

[1] The statute of limitations applicable to this action is the 2 year statute for personal injury actions. (Ill. Rev. Stat. 1973, ch. 83, par. 15.) The current statute of limitations for medical malpractice cases (Ill. Rev. Stat. 1977, ch. 83, par. 22.1) was not in effect on the date this action was filed.

We find support for this conclusion in *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 334 N.E.2d 160. There the supreme court cited with approval *Kohler v. Woollen, Brown & Hawkins* (1973), 15 Ill. App. 3d 455, 304 N.E.2d 677, and *Wigginton v. Reichold Chemicals, Inc.* (1971), 133 Ill. App. 2d 776, 274 N.E.2d 118, both of which held that the limitation period commences when the injured party discovers or should have discovered that he was injured by the defendant's conduct. *Tom Olesker's*, 61 Ill. 2d 129, 135.

■■ Applying the reasoning of *Roper* to the facts before us, we are unable to conclude as a matter of law at which point plaintiff discovered or should have discovered that she was injured by defendants' conduct. In this regard the present case differs from *Anguiano v. St. James Hospital* (1977), 51 Ill. App. 3d 229, 366 N.E.2d 930, *appeal denied* (1977), 66 Ill. 2d 637. There we were able to conclude, based on the plaintiff's affidavits, that as a matter of law the latest date that the plaintiff knew or should have known of the defendant's negligence was more than 2 years prior to filing the action. Therefore, we remand the present case with directions to the trial court to allow the presentation of evidence on this question. Precedent for this procedure appears in *Basque v. Yuklinliau* (1968), 50 Haw. 397, 441 P.2d 636, cited by the court in *Tom Olesker's*, 61 Ill. 2d 129, 136.

In reaching our decision we have considered *Berry v. G. D. Searle & Co.* (1974), 56 Ill. 2d 548, 309 N.E.2d 550, which is relied upon by the defendants for the proposition that when a party suffers a traumatic injury the limitation period commences at the time the injury occurs.

■■ We note that nowhere in *Berry* does the court define the exact meaning of the term "traumatic injury." In our opinion, the classification of an injury as traumatic or nontraumatic, in and of itself, is of no significance. The only benefit to be derived from such a classification is that it aids in the determination of the controlling factual issue in each case, namely, when did the plaintiff discover or when should he reasonably have discovered that the injury was caused by the defendant's wrongful conduct.

■■ In many cases the nature and circumstances of the injury render its cause obvious to the injured party at the time of the occurrence. However, the nature and circumstances of the injury may be such that its cause is unknown or apparently innocent at the time it occurs. In the latter type of situation it would be "manifestly unrealistic and unfair to bar a negligently injured party's cause of action before he has had an opportunity to discover that it exists. This is true whether the malpractice consists of leaving a foreign object in the body or whether it consists of faulty diagnosis or treatment." *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 41, 262 N.E.2d 450, quoted in *Roper*, 59 Ill. App. 3d 706, 710.

814

Whether plaintiff discovered or should have discovered the wrongful cause of her condition more than 2 years prior to the institution of these proceedings is a preliminary question of fact to be determined by the trial court upon the basis of all the circumstances involved. For the foregoing reasons the cause is remanded with directions to proceed in accordance with the views herein expressed.

Cause remanded with directions.

O'CONNOR and BUCKLEY, JJ., concur.