LINDA IKENN, Plaintiff-Appellant, *v.* NORTHWESTERN MEMORIAL HOSPITAL *et al.*, Defendants-Appellees.

First District (5th Division)    No. 78-1379

Opinion filed June 22, 1979.

Crooks, Gilligan & Kages, Ltd., of Chicago (John W. Gilligan, of counsel), for appellant.

Lord, Bissell & Brook, of Chicago (Hugh C. Griffin and R. Dennis Rasor, of counsel), for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff appeals the dismissal of her medical malpractice action, and the sole issue presented for review is whether her claim is barred by the applicable limitations period.

The pertinent portions of plaintiff's second amended complaint alleged that she was born prematurely on November 24, 1953, at Wesley

Memorial Hospital (the Hospital); that after birth she was placed in an incubator and for a period of four weeks an uncontrolled flow of oxygen was administered to her; that each defendant breached a duty of care owed her "[b]y administering to a premature infant an uncontrolled flow of oxygen continuously for a long period of time and in excessive quantities * * *"; that as a direct and proximate result of such breach of duty, plaintiff became blind in both eyes; that she had no knowledge that her blindness might or could have been caused by any or all of the defendants until a certain magazine article was read to her in March 1975; that no physician or other medical personnel had informed her of the cause of her blindness prior to March 1975; and that she had no knowledge of the treatment administered at the hospital until November 1976.

OPINION

Plaintiff contends that the applicable statute of limitations begins to run when the injured party discovers or should have reasonably discovered not only the nature of her affliction but also that it may have been wrongfully caused. We agree

Illinois law provides that:

"No action for damages for injury * * * against any physician or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known * * * of the existence of the injury * * * for which damages are sought in the action. * * * .

If the person entitled to bring the action is, at the time the cause of action occurred, under the age of 18 years, * * * the period of limitations does not begin to run until the disability is removed. (Ill. Rev. Stat. 1977, ch. 83, par. 22.1.)

Such provision has been viewed as the codification of the discovery rule announced in *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656 (*i.e.*, a cause of action accrues when plaintiff knew or should have known of defendant's error) and first applied to medical malpractice cases in *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 262 N.E.2d 450. See *Fure v. Sherman Hospital* (1978), 64 Ill. App. 3d 259, 380 N.E.2d 1376.

*Lipsey* involved a plaintiff who entered defendant hospital for the removal of a lump located on her left arm. A biopsy was performed by members of defendant's staff, who determined that the lump was benign. Three years later, after another lump was found to be malignant, a reexamination of a frozen section of the first lump established that it had also been malignant. Plaintiff then underwent radical surgery for the removal of her left breast, shoulder, and arm. Within two years of this

surgery but in excess of two years after the initial erroneous biopsy plaintiff brought an action for medical malpractice, which was dismissed. On appeal, the supreme court framed the issue as follows:

"The principal issue * * * is whether the two year period of limitations * * * began to run * * * at the time of the plaintiff's first surgery and the alleged negligence, or at the time that the plaintiff discovered her true condition or should have known of it and the defendant's claimed negligence. If the latter standard should have been applied by the trial court, dismissal of the plaintiff's complaint on the ground that it was barred by the Statute of Limitations was improper." (46 Ill. 2d 32, 37, 262 N.E.2d 450, 453.)

Following a review of relevant decisions of this and other jurisdictions and after noting that the point in time at which a cause of action for medical malpractice accrues had not been legislatively mandated, the *Lipsey* court reversed the dismissal, stating:

"We extend the rule of time of discovery followed by us in *Rozny* and hold that, in medical malpractice cases as this, the cause of action accrues when the person injured learns of his injury or should reasonably have learned of it. * * *

* * * '* * * It is manifestly unrealistic and unfair to bar a negligently injured party's cause of action before he has had an opportunity to discover that it exists. This is true whether the malpractice consists of leaving a foreign object in the body or whether it consists of faulty diagnosis or treatment.' " 46 Ill. 2d 32, 40-41, 262 N.E.2d 450, 455.

Subsequently, *Roper v. Markle* (1978), 59 Ill. App. 3d 706, 710, 375 N.E.2d 934, 937-38, analyzed the rule of *Lipsey* as follows:

"In view of the court's phrasing of the issue and avowed concern that negligently injured plaintiff's actions not be barred before they have an opportunity to realize that one exists, it is our conclusion that any support which *Lipsey's* phrase, 'learns of the injury' lends to the interpretation advanced by defendant that knowledge of the existence of a physical problem is the triggering event *in all cases* for the running of the limitations period was unintentional. The phrase was intended to express that the statute begins to run when there is a concurrence of the actual or constructive knowledge of both the physical problem and the possibility that someone is at fault for its existence. The current statutory language of section 21.1 of the Limitations Act (Ill. Rev. Stat. 1975, ch. 83, par. 22.1) * * * was patterned after *Lipsey* and must be construed as expressing this same concept."

In *Roper*, plaintiff alleged that in performing a hysterectomy defendant severed one of her ureters; that the resulting loss of urine infected and

inflamed a kidney—causing its surgical removal; and that two years and four months later, a urologist informed her that defendant's negligence was the cause of her kidney removal. The trial court dismissed plaintiff's action because it had been filed " 'more than two years after the occurrence of the plaintiff's injury.' " (59 Ill. App. 3d 706, 707, 375 N.E.2d 934, 935.) The court also stated the question presented on appeal to be "whether the limitations period's 'discovery rule' applicable to medical malpractice cases tolls the running of the statutory time period until such time as the potential plaintiff knew or should have known both that he has a physical injury and that it may be a result of someone's negligence." 59 Ill. App. 3d 706, 707, 375 N.E.2d 934, 935.

In answering this question affirmatively, the court noted (1) that a literal reading of section 21.1 would be consistent only with the prediscovery rule that the occurrence of the last act giving rise to a cause of action starts the running of the limitations period; (2) that in *Lipsey*, there was a nearly simultaneous concurrence of knowledge by plaintiff that there was a misdiagnosis of her condition and that it might have resulted from the negligence of another; (3) that although in some cases knowledge of a physical problem carries with it an awareness of wrongful causation, it does not necessarily follow that the limitations period is triggered in all malpractice cases upon knowledge of a physical problem; (4) that in cases where a physical ailment resulting from negligence is of a type which does not immediately put a person on notice of its origin, the cause of action accrues and the limitations period begins to run when the person discovered or should have discovered that such ailment was the result of the wrongful conduct of another; and (5) that until a person knows or should have known that a physical condition, apparently innocent in causation, was possibly the result of an act of another which may have been negligent, the person has not been afforded an opportunity to discover the existence of a cause of action and, consequently, has not triggered the limitations.

This reasoning of the *Roper* court led it to the conclusion that under the language of *Lipsey*, when viewed as a whole and consistent with the provisions of section 21.1, the limitations period does not begin to run until there is a concurrence of actual or constructive knowledge of both the existence of a physical problem and the possibility of its wrongful causation by another; provided, however, that in situations where the problem itself would not cause a reasonable person to suspect that its origin lies in another's negligence, notice of the existence of the problem in itself will not be deemed as constructive knowledge of its causation. Accord, *Fure v. Sherman Hospital; Kristina v. St. James Hospital* (1978), 63 Ill. App. 3d 810, 380 N.E.2d 816; *Anguiano v. St. James Hospital* (1977), 51 Ill. App. 3d 229, 366 N.E.2d 930. See also *Ilardi v. Spaccapaniccia* (1977), 53 Ill. App.

3d 933, 369 N.E.2d 144, where, although affirmance of the trial court's dismissal of plaintiff's action was based upon a literal reading of section 21.1, an application of the principles of *Roper* to the facts presented in *Ilardi* would, in our opinion, also have mandated dismissal.

Two relatively recent decisions of the supreme court lend support to the principles enunciated in *Roper*. In *Berry v. G. D. Searle & Co.*, (1974), 56 Ill. 2d 548, 309 N.E.2d 550, a strict tort liability action, it was held that the severity of plaintiff's condition at the time of the occurrence imparted knowledge that her injury was the result of a traumatic event and that such knowledge triggered the running of the period of limitations. In the defamation case of *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 334 N.E.2d 160, it was noted that where no traumatic injury occurs, the cause of action accrues when plaintiff discovered or should have discovered the existence of the allegedly defamatory report.

Concerning the traumatic/nontraumatic injury dichotomy, it was noted in *Kristina* that:

> "The only benefit to be derived from such a classification is that it aids in the determination of the controlling factual issue in each case, namely, when did the plaintiff discover or when should he reasonably have discovered that the injury was caused by the defendant's wrongful conduct.
>
> In many cases the nature and circumstances of the injury render its cause obvious to the injured party at the time of the occurrence. However, the nature and circumstances of the injury may be such that its cause is unknown or apparently innocent at the time it occurs. In the latter type of situation it would be 'manifestly unrealistic and unfair to bar a negligently injured party's cause of action before he has had the opportunity to discover that it exists.' "

63 Ill. App. 3d 810, 813, 380 N.E.2d 816, 818-19.

It is in the light of the cases cited that we believe the controlling rule to be that the limitations period does not begin to run in malpractice cases until there is concurrence of two factors—that plaintiff knew or reasonably should have known of both the existence of an injury and the possibility of its wrongful causation by someone else.

This conclusion leads us to the question as to whether a plaintiff knew or had reasonable grounds to know of injury or causation is one of fact. In this regard, we note that *Roper* held the question was one of fact for the jury, *Kristina* held it was a "preliminary question of fact" to be decided by the trial court (63 Ill. App. 3d 810, 814, 380 N.E.2d 816, 819), and in *Fure* it was held as a matter of law that plaintiff did not have reasonable grounds to know of the negligent cause of injury. We note also that at least one author posits that:

"The best approach would be to have the jury decide this question like any other fact question. Such treatment would allow either party to request summary judgment limited to this issue when limitations is clearly a bar, or when it is clearly not a bar, while it would preserve the right to a jury trial when there is such evidence as will preclude summary judgment." Letvin, *In Search of the Spirit of Lipsey: Discovery of Malpractice and the Statute of Limitations*, 1978 S. Ill. U.L.J. 345, 364.

■■ ■ While we are of the opinion that the questions of knowledge and causation are ordinarily questions for the trier of fact, we note that there are situations where it is clear that a plaintiff knew or should have known of injury and causation, in which event they would be matters of law to be decided by the trial court. See *Berry v. G. D. Searle, Inc.*, where in a strict tort liability action the court stated:

"We find it unnecessary to consider at length plaintiff's contention that her action in strict tort liability accrued on June 1, 1967, as alleged in her complaint. It asserts that on May 30, 1965, she suffered a cerebral vascular accident. Her reply brief candidly states that she 'knew she was ill, that she had suffered a stroke and was partially and permanently paralyzed.' However, she maintains that it was not until June 1, 1967, that she knew that Enovid was the cause of this condition. From plaintiff's description of the severity of her condition in the complaint and her reply brief it is inconceivable that her injury was not occasioned by a traumatic event and that she knew of this injury more than two years prior to the filing of her complaint." 56 Ill. 2d 548, 559, 309 N.E.2d 550, 556.

In the instant case, we believe that plaintiff's blindness was the type of physical problem which imparted constructive knowledge that it was the result of a traumatic event occasioned by another's wrongful act. She alleged that she was born prematurely and that her blindness was caused by the medical care rendered by defendants during the four weeks that she was in an incubator after her birth. Although she also alleges that no one informed her of the cause of her blindness until, at age 22, she learned for the first time of possible causation from a magazine article which was read to her, we note that she makes no allegation that she could not have reasonably known of the cause of her blindness at an earlier time or that she reasonably believed her condition was of innocent causation. Because blindness is an unusual condition, we believe that plaintiff reasonably and perhaps very easily, by merely making inquiry, should have learned before her 20th birthday that her blindness occurred during treatment in the hospital after her birth and that, under such circumstances, a reasonable person should have known that it could have been caused by the wrongful conduct of another.

700

Accordingly, we conclude that the trial court properly held that the limitations period began to run when plaintiff attained her majority and, because that event occurred more than two years prior to the institution of this action, we see no error in the dismissal of her action.

For the reasons stated, the judgment appealed from is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.