DARRYL URCHEL, Plaintiff-Appellant, *v.* HOLY CROSS HOSPITAL *et al.*, Defendants-Appellees.

First District (4th Division) No. 78-1520

Opinion filed March 27, 1980.—Rehearing denied April 25, 1980.

Philip Maher, of Chicago, for appellant.

Lord, Bissell & Brook, Clausen, Miller, Gorman, Caffrey & Witous, P. C., Hinshaw, Culbertson, Moelmann, Hoban & Fuller, and Baker & McKenzie, all of Chicago (Hugh C. Griffin, Thomas H. Ryerson, Stanley J. Davidson, and Charles B. Lewis, of counsel), for appellees.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Darryl Urchel, appeals from the circuit court of Cook County's dismissal of his second amended complaint which alleged medical malpractice on the part of the defendants, Holy Cross Hospital, Southwest Radiological Associates, Ltd., Community Association of Emergency Physicians, Ltd., and Frank DeVincenzio, M.D. Anticipating a statute of limitations defense, the complaint alleged the medical malpractice was not and could not reasonably have been discovered until almost three years after it occurred and that the defendants fraudulently concealed the cause of action from the plaintiff.

On September 16, 1973, the plaintiff sustained a fractured neck in a collision between an automobile in which he was riding and a CTA bus. He was taken to the emergency room at Holy Cross Hospital. The plaintiff remained there as a patient for approximately three months. Upon his discharge he was a quadriplegic.

In 1973 the plaintiff filed a negligence action against the CTA seeking to recover damages for the full extent of his injuries. That suit was settled in 1976 and the complaint was dismissed with prejudice.

On March 4, 1977, the plaintiff filed suit against the present defendants. The second amended complaint alleged that the defendants were responsible for aggravating the plaintiff's initial injuries because they failed to timely diagnose his injury, failed to immobilize him and failed to treat his condition upon his arrival at Holy Cross.

The complaint further alleged that the plaintiff first became aware of the defendants' alleged liability on August 23, 1976, almost three years after the accident and alleged negligence, when Geraldine Humphrey gave a deposition in another case arising out of the same CTA bus accident. In her deposition Humphrey testified that she saw the plaintiff "sitting up" in the hospital emergency room. The complaint alleges that August 23, 1976, was the first time the plaintiff knew or could have discovered that any portion of his injuries was attributable to medical malpractice. It further alleges that when the plaintiff was admitted to the hospital he was semiconscious, in pain, frequently hallucinating and was unaware of his surroundings. The trial court granted the defendants' motion to dismiss on statute of limitations grounds.

On appeal, the plaintiff contends the statute of limitation in a medical malpractice action begins to run when the plaintiff discovers or should reasonably discover not only the nature of the affliction but also that it was

wrongfully caused. The plaintiff submits that not until August 23, 1976, when Humphrey testified that she had seen the plaintiff sitting up in the emergency room, did he have any reason to know that his paralysis was caused by the defendants' negligence rather than by the injury sustained in the car accident. He therefore contends that his suit was timely filed within the two years subsequent to the "time of discovery."

The statute of limitations discovery rule was first applied to a medical malpractice case in Illinois in *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 262 N.E.2d 450. The supreme court in *Lipsey* held that a cause of action in medical malpractice cases accrues when the person injured "learns of his injury or should reasonably have learned of it." (46 Ill. 2d 32, 40, 262 N.E.2d 450, 455.) The court found it "manifestly unrealistic and unfair to bar a negligently injured party's cause of action before he has had an opportunity to discover that it exists." 46 Ill. 2d 32, 41, 262 N.E.2d 450, 455.

In 1975, the legislature enacted the following statute:
"No action for damages for injury * * * against any physician or hospital duly licensed under the laws of this State, * * * arising out of patient care shall be brought more than 2 years after the date on which the claimant *knew, or through the use of reasonable diligence should have known,* * * * *of the existence of the injury* * * *." (Emphasis added.) Ill. Rev. Stat. 1975, ch. 83, par. 22.1.

The *Lipsey* court had no occasion to draw a distinction between discovery of injury and discovery of possible negligence since in that case the two "discoveries" occurred virtually simultaneously. A recent appellate court decision, *Roper v. Markle* (1978), 59 Ill. App. 3d 706, 375 N.E.2d 934, interpreted the phrase "learns of the injury," as used by the *Lipsey* court, to mean "that the statute begins to run when there is a concurrence of the actual or constructive knowledge of both the physical problem and the possibility that someone is at fault for its existence." (59 Ill. App. 3d 706, 710, 375 N.E.2d 934, 938.) The *Roper* interpretation has been adopted and applied in most of the subsequent cases concerning the discovery rule. See, *e.g., Licka v. William A. Sales, Ltd.* (1979), 70 Ill. App. 3d 929, 388 N.E.2d 1261; *Kristina v. St. James Hospital* (1978), 63 Ill. App. 3d 810, 380 N.E.2d 816; *Cutsinger v. Cullinan* (1979), 72 Ill. App. 3d 527, 391 N.E.2d 177; *Bebee v. Fields* (1979), 79 Ill. App. 3d 1009, 398 N.E.2d 1214.

■■ Here, the plaintiff was aware of his full injuries and of the possibility that the CTA was at fault. Although the plaintiff was allegedly not aware of the fact that different defendants, those involved in this case, were responsible for a portion of his injuries until a much later date, we do not believe this brings the case within the ambit of the discovery rule. Beginning with the time the plaintiff was injured and became aware of the

possibility that someone was at fault, he was subject to constructive knowledge of the normal two-year statute of limitations within which a suit for medical malpractice must be brought. During this period of time the plaintiff should have thoroughly investigated the circumstances of the accident and events occurring subsequent thereto to determine not only the facts necessary to his suit against the CTA but, in addition, to determine whether any other parties might have been at fault. The plaintiff had an opportunity to know he had a cause of action. *Lipsey.*

The plaintiff also argues the trial court erred in dismissing the counts which alleged fraudulent concealment.

The applicable statute provides:

> "If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled to bring the same discovers that he has such cause of action, and not afterwards." (Ill. Rev. Stat. 1973, ch. 83, par. 23.)

The plaintiff argues the defendants fraudulently concealed the fact that their actions in moving his neck caused him permanent paralysis and that this was contrary to their duty to disclose the effects of their treatment. In *Chicago Park District v. Kenroy, Inc.* (1978), 58 Ill. App. 3d 879, 886-87, 374 N.E.2d 670, 675, this court stated:

> "The concealment of a cause of action which will prevent the operation of the statute of limitations must consist of affirmative acts or representations designed to prevent, and which do prevent, the discovery of the cause of action. [Citations.] Mere silence of the defendant and mere failure on the part of the plaintiff to learn of a cause of action do not amount to such fraudulent concealment."

The complaint alleges no more than silence on the part of the defendants. This is not sufficient and the plaintiff has provided no authority for the proposition that the rule should be otherwise where a doctor-patient relationship is involved.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN, P. J., and JOHNSON, J., concur.