PAULA PSZENNY, Plaintiff-Appellant, v. GENERAL ELECTRIC COM-
PANY *et al.*, Defendants-Appellees.

First District (2nd Division)  No. 84—1996

Opinion filed April 23, 1985.

Hayes,. Pesek & Webb, of Oak Brook (Charles J. Pesek, of counsel), for
appellant.

Rathje, Woodward, Dyer & Burt, of Wheaton (Reese J. Peck, of counsel),
for appellees.

JUSTICE PERLIN delivered the opinion of the court:

Paula Pszenny, plaintiff, appeals from an order of the circuit court
of Cook County which dismissed with prejudice count III of her multi-
count complaint. The trial court made the dismissal final and appeala-
ble pursuant to Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)).[1]

Count III alleges: In the fall of 1981 plaintiff, from an unascer-
tained origin, began to suffer nausea, headaches, earaches, dizziness
and blackouts. She sought medical treatment from defendant Dr.
Hoffman in November and December 1981. Hoffman was unable to
determine the cause of her ailments and he requested plaintiff to un-
dergo a "CAT Scan" test at defendant Central Du Page Hospital.

The test was administered to plaintiff on January 11, 1982. Plain-

---

[1]This appeal involves only the dismissal of count III, and the allegations against
defendant hospital. Therefore, facts which relate to the still pending counts against
other defendants are omitted from this opinion.

tiff alleges that in preparation for the CAT scan test, she was injected with a substance containing iodine. Upon being so injected, she became "violently ill." She believed, at the time, that this condition she experienced at the hospital was merely another manifestation of the unknown ailment which Dr. Hoffman was attempting to treat.

In February 1982, she was informed by a person at Dr. Hoffman's office that she had suffered an "allergic reaction" to the iodine which had been administered in preparation for the CAT scan test.

In March 1983, plaintiff consulted with another doctor concerning an unrelated ailment. During the course of her treatment she learned that if she had been tested for an allergic reaction to iodine before administration of the CAT scan test, she might have avoided the incident suffered at the hospital. She filed her complaint on February 7, 1984, some two years and three weeks after the CAT scan test.

In June 1984, defendant hospital filed a motion to dismiss count III (the only count directed against it), on the ground that the complaint was filed beyond the applicable two-year statutory limitations period. The hospital contended that plaintiff's reaction to the CAT scan test was a "traumatic" injury which, as a matter of law, commenced running of the limitations period on the day that the injury occurred.

Plaintiff responded that the injury she suffered was not properly classified as "traumatic," that she had two years from the time she "knew or should have known both that she was injured and that the injury was wrongfully caused" and that such issue was one to be determined by the trier of fact.

The trial court ruled that the injury suffered by plaintiff at the hospital was a "traumatic" injury and that the two-year statute of limitations therefore began running on the day the Cat scan test was administered. Holding that the complaint against the hospital was not timely filed, he dismissed it with prejudice. This appeal follows.

The applicable limitations statute (Ill. Rev. Stat. 1983, ch. 110, par. 13—212) provides, in relevant part:

> "No actions for damages or death against any \*\*\* hospital \*\*\* arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, \*\*\* of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first \*\*\*."

As the Illinois Supreme Court stated in *Witherell v. Weimer*

(1981), 85 Ill. 2d 146, 156, 421 N.E.2d 869, the "discovery rule" postpones the starting of this two-year limitations period until the injured party knows or should have known both of his injury and that it may have been negligently caused.

"The [limitations] statute starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused. At that point the burden is upon the injured person to inquire further as to the existence of a cause of action. [Citations.] In many, if not most, cases the time at which an injured party knows or reasonably should have known both of his injury and that it was wrongfully caused will be a disputed question to be resolved by the finder of fact. [Citation.] Where it is apparent from the undisputed facts, however, that only one conclusion can be drawn, the question becomes one for the court. [Citation.]" 85 Ill. 2d 146, 156.

In the event it is determined that a plaintiff's injury is caused by a "sudden traumatic" event his cause of action accrues, and the limitations statute begins to run, on the date the injury occurs. (*Bates v. Little Company of Mary Hospital* (1982), 108 Ill. App. 3d 137, 438 N.E.2d 1250.) The classification of an injury as "traumatic" or "nontraumatic" merely aids in the determination of when the plaintiff discovered, or should have discovered, that the injury was caused by the wrongful conduct of a defendant; the more obvious the injury the more easily a plaintiff should be able to determine its cause. *Watkins v. Health & Hospitals Governing Com.* (1979), 78 Ill. App. 3d 468, 397 N.E.2d 228.

"Traumatic injuries" have been defined as those where "the damage is caused by external violence" (*Roper v. Markle* (1978), 59 Ill. App. 3d 706, 711, 375 N.E.2d 934) and those which are "immediate and caused by an external force" (*Lind v. Zekman* (1979), 77 Ill. App. 3d 432, 438, 395 N.E.2d 964). The nature and circumstances surrounding the "traumatic injury" are such that the injured party is thereby put on notice that actionable conduct might be involved. "However, the nature and circumstances of the injury may be such that its cause is unknown or apparently innocent at the time it occurs. In the latter type of situation it would be 'manifestly unrealistic and unfair to bar a negligently injured party's cause of action before he has had an opportunity to discover that it exists. ***.' [Citation]." *Kristina v. St. James Hospital* (1978), 63 Ill. App. 3d 810, 813, 380 N.E.2d 816.

Injuries held to be "traumatic" include blindness caused by an

uncontrolled flow of oxygen (*Ikenn v. Northwestern Memorial Hospital* (1979), 73 Ill. App. 3d 694, 392 N.E.2d 440); stroke and paralysis resulting from ingestion of birth control pills (*Berry v. G.D. Searle & Co.* (1974), 56 Ill. 2d 548, 309 N.E.2d 550); injuries suffered when plaintiff was pinned beneath a forklift truck (*Bates v. Little Company of Mary Hospital* (1982), 108 Ill. App. 3d 137, 438 N.E.2d 1250); and paralysis resulting from a car accident and subsequent medical treatment (*Urchel v. Holy Cross Hospital* (1980), 82 Ill. App. 3d 1050, 403 N.E.2d 545).

However, in cases in which negligent medical treatment was allegedly afforded during a time when the plaintiff was being treated for a preexisting condition, the courts are hesitant to apply the "traumatic event" aspect of the discovery rule. Thus, in *Lind v. Zekman* (1979), 77 Ill. App. 3d 432, 395 N.E.2d 964, plaintiff, several years after undergoing lens extraction surgery, lost the sight in that eye. Reversing the trial court's summary judgment, and denying defendant's contention that the blindness was a "traumatic" injury which commenced the running of the limitations period, the appellate court found that "there is nothing in the transcript to draw the conclusion that at the time she discovered her injury she should have made the causal connection between her lens extraction surgery and her blindness. ***. She could have been under the impression that her condition, although characterized as 'unusual,' was an innocent result of her eye surgery." 77 Ill. App. 3d 432, 438.

In *Watkins v. Health & Hospitals Governing Com.* (1979), 78 Ill. App. 3d 468, 397 N.E.2d 228, plaintiff, a diabetic, entered a hospital for certain tests. At one point a dye was injected into her leg which caused a bloodclot and resulted in the amputation of the leg. Reversing the trial court's dismissal of the complaint, the appellate court found:

> "In light of the fact of plaintiff's diabetic tendencies, it was possible for her to have her leg amputated and reasonably believe it was caused by her diabetic condition. This possibility was enough to prevent her from knowing or suspecting the negligence of the hospital in administering the dye test to her.
> * * *
> There is nothing in the pleadings that suggests she should have reasonably become aware of the connection between the dye test and the amputation of her leg. It would be quite reasonable for plaintiff, a diabetic, to assume the amputation was a result of her diabetes and not the defendant's negligence. It was not until plaintiff discovered the amputation was due to

another's negligence that she should be imputed with knowledge of her right to a cause of action." *Watkins v. Health & Hospitals Governing Com.* (1979), 78 Ill. App. 3d 468, 472-73; see also *Martinez v. Rosenzweig* (1977), 70 Ill. App. 3d 155, 387 N.E.2d 1263.

Turning to the instant case, plaintiff entered the hospital to determine the source of a host of ailments. Shortly after the CAT scan test, she again became severely ill. There is nothing in the pleadings which requires the conclusion that she should, at that time, have become aware of a connection between her hospital sickness and the CAT scan test.

In light of these circumstances, and the above authorities, we believe the trial court erred in concluding that the injury plaintiff suffered at the hospital was a "traumatic" event which commenced running of the statute of limitations. The injury suffered here was not the result of "external violence" such as an industrial or automobile accident. Moreover, the record indicates that the symptoms suffered by plaintiff at the hospital were not so markedly different from those which caused plaintiff to enter the hospital in the first place. Otherwise stated, plaintiff could reasonably have assumed that the hospital affliction was merely another manifestation of her preexisting condition, and that it was nonnegligently caused.

The question, therefore, of when plaintiff knew, or should have known, of her hospital injury and that it was caused by the negligent acts of another is an issue of fact to be resolved under all of the relevant facts and circumstances by the finder of fact.

For the foregoing reasons, the order of the circuit court dismissing count III of plaintiff's complaint is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

STAMOS, P.J., and BILANDIC, J., concur.