748 N.E.2d 1238 (2001)
322 Ill. App.3d 64
255 Ill.Dec. 168
Latonia CLARK, Special Adm'r of the Estate of Ashanti Beasley, Deceased, Plaintiff-Appellant,
v.
GALEN HOSPITAL ILLINOIS, INC., d/b/a Columbia Michael Reese Hospital and Medical Center; Zubair Amin # 6200; Wasef, a/k/a Vassef; and Nenette Alonzo, Defendants-Appellees (John B. Payton, Defendant; Dr. # 1341, a/k/a Baurlygen, respondent in discovery).
No. 1-99-3152.
Appellate Court of Illinois, First District, Second Division.
May 1, 2001.
*1240 Steven B. Muslin, Thomas J. Rainville, Jr., Steven B. Muslin, Ltd., Chicago, for Plaintiff-Appellant.
Lord, Bissell & Brook, Chicago (Hugh C. Griffin, Hugh S. Balsam, Stevie A. Kish and Christine M. Roman, of counsel), for Defendants-Appellees.
Robert Marc Chemers, Richard M. Waris, Scott L. Howie, Pretzel & Stouffer, Ctd., Chicago, for Defendant-Appellee Samir Wassef, M.D.
Justice COUSINS delivered the opinion of the court:
Plaintiff Latonia Clark, as administrator of the estate of Ashanti Beasley, brought a medical negligence action to recover damages for the wrongful death of her son, Ashanti Beasley. Plaintiff sued defendants Galen Hospital Illinois, Inc., d/b/a Columbia Michael Reese Hospital and Medical Center (Michael Reese Hospital); John B. Payton, M.D.; Dr. Zubair Amin # 6200; Dr. Wasef, a/k/a Vassef (Wasef); Nenette Alonzo, R.N.; and Dr. # 1341 Respondent in Discovery, a/k/a Dr. Baurlygen, for failure to properly diagnose and treat her son, who allegedly died as a result of sepsis brought on by a dislodged venus catheter on September 22, 1995.
Defendants Dr. Wasef, Michael Reese Hospital, Dr. Amin and nurse Alonzo filed motions to dismiss, alleging that the suit was barred by the two-year statute of limitations governing medical malpractice actions. 735 ILCS 5/13-212(a) (West 1998). The trial court granted the defendants' motions and dismissed the suit.[1]
On appeal, plaintiff argues that the trial court erred by finding that the death of plaintiff's infant on September 22, 1995, constituted a traumatic injury which triggered the statute of limitations. Rather, plaintiff contends that the statute of limitations commenced when she received an expert's report, on April 11, 1997, which revealed that death was due to a dislodged venus catheter.

BACKGROUND
On August 28, 1995, plaintiff gave birth to Ashanti Beasley, a 23-week-old premature boy, at Michael Reese Hospital. He was transferred to the University of Illinois Hospital at Chicago on September 9, 1995. The infant died on September 22, 1995. The medical certificate of death, filed on October 31, 1995, stated that Ashanti died from septic shock due to disseminated intravascular coagulation. At the time of death, plaintiff alleges that she was told "the baby died because of complications *1241 due to it [sic] being premature, having an infection and low birth weight, and because his blood was clotting and he couldn't tolerate all the transfusions."
Plaintiff alleges that on February 27, 1996, five months after Ashanti's death, she first sought legal counsel from Hertzel Levine, who agreed to determine if she had a cause of action. At this meeting, plaintiff consented to the release of the infant's medical records. However, plaintiff was never contacted by Mr. Levine again.
Plaintiff subsequently retained her present attorney, obtained the infant's medical records, and hired a medical expert, neonatologist Dr. Stuart Danoff. On April 11, 1997, plaintiff received a report from Dr. Danoff. His report stated:
"That following said review, I am of the opinion that there is a reasonable and meritorious cause for the filing of the action against each of the following defendants: Galen Hospital Illinois, Inc., * * * Zubair Amin, M.D., Dr. Wassef and Nenette Alonzo, for all of the following reasons:
a. Failed to order x-rays after the insertion and placement of UVC's and UAC's;
b. Failed to properly manage plaintiff's decedent to insure x-rays were ordered and read;
c. Failed to take due cognizance of the condition of ill being of plaintiff's decedent and immediately order x-rays which would have clearly established a problem with the UVC;
d. Failed to provide proper and adequate neonatal/pediatric care to plaintiff's decedent as stated above;
e. Failed to consult with physicians skilled in other specialities of medicine and capable of properly and timely diagnosing and treating plaintiff's decedent;
f. Improperly cut the UVC line and/or improperly dislodged the UVC line.
As a direct and proximate result of one or more of the foregoing wrongful acts and/or omissions of the defendants, * * * Ashanti Beasley died on September 22, 1995."
Approximately 10 months after receiving Danoff's report, plaintiff filed her original complaint for medical negligence on February 19, 1998. On June 25, 1998, Dr. Wasef moved to dismiss the complaint pursuant to section 2-619(a)(5) (735 ILCS 5/2-619(a)(5) (West 1998)) as time-barred under section 13-212(a) (735 ILCS 5/13-212(a) (West 1998)) because plaintiff failed to file it within two years of the infant's death. In response, plaintiff asserted that she did not learn that negligence could have caused the infant's death until April 1997, when she received Dr. Danoff's report. The trial court dismissed plaintiff's complaint without prejudice.
On November 12, 1998, plaintiff filed her first amended complaint, which added that she first sought legal counsel on February 27, 1996. Dr. Wasef again moved to dismiss the action as time-barred. The trial court granted the second motion to dismiss without prejudice, with directions that the subsequent complaint should specify:
"when and how plaintiff was put on notice * * * plaintiff's argument is right that she had no notice and couldn't have known what the negligence was at the time of the death of her child. There had to be something between then and when she went to the lawyer, and I want at least that to be spelled out in the complaint with regard to when."
In plaintiff's second amended complaint, she made the following allegations to support her view that she had no notice of the wrongful nature of the infant's death until April 1997:

*1242 "Plaintiff did not discover that decedent Ashanti Beasley's death was wrongfully caused by the negligence of the Defendants, or became possessed with sufficient information concerning the cause of his death until April of 1997 when neonatologist Stuart Danoff M.D. reviewed the only available records in this cause and determined that the death was wrongfully caused and did not die solely from complications due to being premature, having an infection, low birth weight, and because his blood was clotting and he couldn't tolerate all the transfusions, and conveyed that fact to her attorneys. The first time Plaintiff sought legal counsel in this cause was in late February, 1996, when after discussing her hospitalization and her baby's death with a friend the friend suggested she contact her attorney Hertzel Levine who was handling a few cases for her, thereafter, she met with Mr. Hertzel Levine on February 27, 1996 who indicated to her that he did not know if she had a case, but would have her sign a medical authorization so he could order the medical records, to determine if she had a case. That she was never contacted again by Mr. Levine, in any regard."
Dr. Wasef moved to dismiss the second amended complaint again on statute of limitations grounds. On July 1, 1999, the trial court granted Dr. Wasef's motion to dismiss with prejudice on the grounds that plaintiff's second amended complaint was time-barred. Defendants further allege that the trial court determined as a matter of law under Nordsell v. Kent, 157 Ill. App.3d 274, 109 Ill.Dec. 738, 510 N.E.2d 606 (1987), that the infant's death was a sudden and traumatic event putting plaintiff on immediate notice to inquire whether the death was wrongfully caused.
Defendants Michael Reese Hospital, Dr. Amin and nurse Alonzo then moved to dismiss the second amended complaint on the same statute of limitations grounds asserted by Dr. Wasef. On July 27, 1999, the trial court granted defendants' motion with prejudice.
Plaintiff appeals. We reverse and remand.

ANALYSIS
Plaintiff contends that the trial court erred by dismissing her complaint as time-barred. Section 2-619(a)(5) allows dismissal of a case when "the action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 1998). When considering a section 2-619 motion, all pleadings and supporting documents must be construed in a light most favorable to the nonmoving party, and the motion should be granted only when no material facts are disputed and defendant is entitled to dismissal as a matter of law. Young v. McKiegue, 303 Ill.App.3d 380, 386, 236 Ill.Dec. 907, 708 N.E.2d 493 (1999). Review of a dismissal pursuant to section 2-619 is de novo. Young, 303 Ill. App.3d at 386, 236 Ill.Dec. 907, 708 N.E.2d 493.
Medical malpractice actions are governed by a two-year statute of limitations under section 13-212(a) of the Code of Civil Procedure. 735 ILCS 5/13-212(a) (West 1999). Under section 13-212(a), any claim of malpractice against a physician or hospital must be filed within two years of "the date on which the claimant knew, or through the use of reasonable diligence should have known, * * * of the existence of the injury or death for which damages are sought." 735 ILCS 5/13-212(a) (West 1999). The statute of limitations is tolled until plaintiff knows or reasonably should have known both that an injury occurred and that it was wrongfully caused. Witherell v. Weimer, 85 Ill.2d 146, 156, 52 Ill. Dec. 6, 421 N.E.2d 869 (1981).
*1243 Generally, the issue of when a party knew or should have known that an injury was wrongfully caused is one of fact. Witherell, 85 Ill.2d at 156, 52 Ill.Dec. 6, 421 N.E.2d 869. The term "wrongfully caused" does not mean plaintiff must have knowledge of a specific defendant's negligent conduct or knowledge of the existence of a cause of action before the statute is triggered. Saunders v. Klungboonkrong, 150 Ill.App.3d 56, 59, 103 Ill.Dec. 565, 501 N.E.2d 882 (1986); Knox College v. Celotex Corp., 88 Ill.2d 407, 416, 58 Ill.Dec. 725, 430 N.E.2d 976 (1981). Instead, the phrase refers to that point in time when "the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." Knox, 88 Ill.2d at 416, 58 Ill.Dec. 725, 430 N.E.2d 976.
Courts often examine the nature of the injury itself in determining when a plaintiff knew or reasonably should have known that an injury was caused by wrongful conduct. Saunders, 150 Ill. App.3d at 60, 103 Ill.Dec. 565, 501 N.E.2d 882, citing Kristina v. St. James Hospital, 63 Ill.App.3d 810, 813, 20 Ill.Dec. 607, 380 N.E.2d 816 (1978). If plaintiff's injury is caused by a "sudden traumatic" event, the statute of limitations begins to run on the date the injury occurs. Pszenny v. General Electric Co., 132 Ill.App.3d 964, 966, 88 Ill.Dec. 170, 478 N.E.2d 485 (1985). A traumatic injury has been defined as one where the damage is caused by external violence (Roper v. Markle, 59 Ill.App.3d 706, 711, 16 Ill.Dec. 827, 375 N.E.2d 934 (1978)) or which is immediate and caused by an external force (Pszenny, 132 Ill. App.3d at 966, 88 Ill.Dec. 170, 478 N.E.2d 485). See Ikenn v. Northwestern Memorial Hospital, 73 Ill.App.3d 694, 29 Ill.Dec. 883, 392 N.E.2d 440 (1979) (blindness resulting from excessive amount oxygen given to premature infant); Berry v. G.D. Searle & Co., 56 Ill.2d 548, 309 N.E.2d 550 (1974) (stroke and paralysis due to ingestion of birth control pills); Bates v. Little Co. of Mary Hospital, 108 Ill.App.3d 137, 63 Ill.Dec. 887, 438 N.E.2d 1250 (1982) (injuries suffered when plaintiff was pinned underneath a forklift truck); Urchel v. Holy Cross Hospital, 82 Ill.App.3d 1050, 38 Ill.Dec. 314, 403 N.E.2d 545 (1980) (paralysis caused by car accident and subsequent medical treatment).
In contrast, the nature and circumstances of the injury may be such that its cause is unknown or apparently innocent at the time it occurs. Kristina, 63 Ill. App.3d at 813, 20 Ill.Dec. 607, 380 N.E.2d 816. "If the injury is * * * an aggravation of a physical problem which may naturally develop, absent negligent causes, a plaintiff is not expected to immediately know of either its existence or potential wrongful cause." Saunders, 150 Ill.App.3d at 60, 103 Ill.Dec. 565, 501 N.E.2d 882. In this latter situation, it would be "`manifestly unrealistic and unfair to bar a negligently injured party's cause of action before he has had an opportunity to discover that it exists.'" Kristina, 63 Ill.App.3d at 813, 20 Ill.Dec. 607, 380 N.E.2d 816, quoting Lipsey v. Michael Reese Hospital, 46 Ill.2d 32, 41, 262 N.E.2d 450 (1970).
Defendant urges this court to adopt the rule that an infant's death or injury should be classified, per se, as the result of a "sudden traumatic" event based on two Third District decisions: Nordsell v. Kent, 157 Ill.App.3d 274, 109 Ill.Dec. 738, 510 N.E.2d 606 (1987), and Lutes v. Farley, 113 Ill.App.3d 113, 68 Ill.Dec. 695, 446 N.E.2d 866 (1983). In Lutes, the plaintiff delivered a stillborn child in May 1978 after receiving morphine. Plaintiff alleged in her complaint that she did not discover the wrongful causation of that injury until July 1980 when her sister began a nursing *1244 course and learned that morphine should not be administered to pregnant women. Lutes, 113 Ill.App.3d at 114, 68 Ill.Dec. 695, 446 N.E.2d 866.
The court held that the stillbirth was a "sudden, traumatic event which should prompt some investigation by the injured party and trigger the application of the discovery rule." Lutes, 113 Ill.App.3d at 115, 68 Ill.Dec. 695, 446 N.E.2d 866. The court did not rely on any definition of the term "sudden, traumatic event," however, and simply cited Berry v. G.D. Searle & Co., 56 Ill.2d 548, 309 N.E.2d 550 (1974), for support. In Berry, plaintiff sought damages for injuries sustained after having taken a birth control pill called Enovid. The drug was prescribed and sold to her on and before May 29, 1965. On May 30, 1965, plaintiff suffered a stroke and paralysis after ingesting the drug. Plaintiff filed her action more than two years after her injury, alleging that she did not learn that the drug caused her injury until June 1, 1967. Berry, 56 Ill.2d at 550, 309 N.E.2d 550.
The Illinois Supreme Court held that plaintiff's action in tort accrued on the date of the occurrence of the stroke. The court explained:
"[The complaint] asserts that on May 30, 1965, she suffered a cerebral vascular accident. Her reply brief candidly states that she `knew she was ill, that she had suffered a stroke and was partially and permanently paralyzed.' However, she maintains that it was not until June 1, 1967, that she knew that Enovid was the cause of the condition. From plaintiff's description of the severity of her condition in the complaint and her reply brief it is inconceivable that her injury was not occasioned by a traumatic event and that she knew of this injury more than two years prior to the filing of her complaint." Berry, 56 Ill.2d at 559, 309 N.E.2d 550.
In our view, Berry relied on the unusualness of plaintiff's condition and the obvious severity of her injury to classify the stroke as a "traumatic event." However, Berry provided no specific guidance relating to this term. See Kristina, 63 Ill.App.3d at 813, 20 Ill.Dec. 607, 380 N.E.2d 816 ("nowhere in Berry does the court define the exact meaning of the term `traumatic injury' "). We also note that in determining that a stillbirth constitutes a traumatic injury as a matter of law, Lutes relied solely upon Berryan adult injury case.
Nordsell took the holding in Lutes one step further. In Nordsell, plaintiff gave birth to twin girls on July 26, 1983. Cara was stillborn, while Sara died two weeks later on August 9, 1983. Plaintiff's complaint, filed on August 14, 1985, alleged that defendants failed to properly assess the gestational age of the unborn twins, thereby allowing plaintiff to proceed with premature labor resulting in emergency surgery. Plaintiff alleged that defendants told her the twins were simply too small and that postnatal death was not uncommon under the circumstances. Plaintiff also alleged that she had no knowledge of wrongdoing until after August 15, 1983, when legal consultation produced evidence that defendants failed to properly diagnose gestational age. Nordsell, 157 Ill.App.3d at 275-76, 109 Ill.Dec. 738, 510 N.E.2d 606. Additionally, the death certificate stated the cause of Cara's death was "stillborn due to * * * placental insufficiency" while Sara's certificate listed "renal failure" and "prematurity" as the cause of death. Nordsell, 157 Ill.App.3d at 276, 109 Ill.Dec. 738, 510 N.E.2d 606.
The court in Nordsell relied on its previous decision in Lutes to conclude that Cara's stillbirth constituted a sudden, traumatic event which triggered the statute of *1245 limitations. With respect to Sara, the court stated:
"Even if Cara's stillbirth did not trigger the discovery rule as to Sara, nevertheless Sara's death two weeks later was the same sort of traumatic injury as would cause plaintiff to inquire into the existence of a cause of action as to Sara." Nordsell, 157 Ill.App.3d at 277, 109 Ill.Dec. 738, 510 N.E.2d 606.
The plaintiff in Nordsell argued that Lutes should not apply to Sara because she lived two weeks and was not stillborn. The court indicated that this argument would have been more persuasive if plaintiff had alleged a different negligent act as to Sara. However, plaintiff alleged negligence in the improper determination of gestational age for both twins. Nordsell, 157 Ill. App.3d at 277, 109 Ill.Dec. 738, 510 N.E.2d 606.
Defendant argues that this court is bound by Nordsell's decision relating to Sara. Some factual similarities do exist: plaintiffs in both cases were told that premature infants do not survive; the death certificates did not alert plaintiffs to wrongful causation of death; and Sara survived two weeks while Ashanti lived about 25 days. However, the plaintiff in Nordsell failed to plead a specific date on which she reasonably could have learned of the injury. Here, plaintiff specifically pleaded that she could not have learned of the cause of the injury until April 11, 1997, the date she received her expert's report.
More significantly, we are not persuaded by Nordsell's reasoning with respect to Sara. We note that the classification of an injury as traumatic or nontraumatic, alone, is of no significance. Kristina, 63 Ill.App.3d at 813, 20 Ill.Dec. 607, 380 N.E.2d 816. The only benefit to be derived from such a classification would be in determining when the plaintiff discovered, or should have discovered, that the injury was caused by wrongful conduct. Kristina, 63 Ill.App.3d at 813, 20 Ill.Dec. 607, 380 N.E.2d 816. Accord Watkins v. Health & Hospitals Governing Comm'n, 78 Ill.App.3d 468, 471, 33 Ill.Dec. 895, 397 N.E.2d 228 (1979); Saunders, 150 Ill.App.3d at 60, 103 Ill.Dec. 565, 501 N.E.2d 882; Hale v. Murphy, 157 Ill. App.3d 531, 534, 109 Ill.Dec. 620, 510 N.E.2d 488 (1987); Gara v. Semerad, 183 Ill.App.3d 622, 629, 131 Ill.Dec. 945, 539 N.E.2d 298 (1989). The more obvious the injury, the more easily a plaintiff should be able to determine its cause. Watkins, 78 Ill.App.3d at 471, 33 Ill.Dec. 895, 397 N.E.2d 228.
Defendant also relies on Ikenn v. Northwestern Memorial Hospital, 73 Ill.App.3d 694, 29 Ill.Dec. 883, 392 N.E.2d 440 (1979). In that case, plaintiff alleged that she was born prematurely and was given an uncontrolled flow of oxygen for four weeks while she was in an incubator following birth. Excessive quantities of oxygen caused her to become blind in both eyes. She also alleged that she discovered the possible cause of her blindness at age 22 when a magazine article was read to her. Ikenn, 73 Ill.App.3d at 694-95, 29 Ill.Dec. 883, 392 N.E.2d 440. The court held that plaintiff's blindness was the type of physical problem which imparted constructive knowledge that it was a traumatic event occasioned by another's wrongful act. The court explained that blindness is an unusual condition and that plaintiff could have easily determined its cause by merely making inquiry, certainly before her twentieth birthday. The court also noted that plaintiff made no allegations that she could not have reasonably known of the cause of her blindness earlier or that she reasonably believed her condition was of innocent causation. Ikenn, 73 Ill.App.3d at 700, 29 Ill.Dec. 883, 392 N.E.2d 440.
*1246 The instant case is factually distinguishable from Ikenn. Plaintiff's blindness in Ikenn was deemed an uncommon condition that does not naturally occur following a premature birth. In contrast, here, the death of a 23-week-old premature infant who suffers from several other complications is not as unusual. Under such circumstances, it was reasonable for plaintiff to believe that Ashanti's death resulted from natural causes, especially when that belief was supported by assertions from medical personnel and the death certificate. Furthermore, unlike Ikenn, the plaintiff here does allege that she could not have reasonably known of cause of Ashanti's death at an earlier timenamely, until April 11, 1997, when she first received the expert's report.
Two instructive cases upon which plaintiff relies are Watkins v. Health & Hospitals Governing Comm'n, 78 Ill.App.3d 468, 471, 33 Ill.Dec. 895, 397 N.E.2d 228 (1979), and Young v. McKiegue, 303 Ill.App.3d 380, 386, 236 Ill.Dec. 907, 708 N.E.2d 493 (1999). Watkins involved a diabetic plaintiff who brought an action seeking damages for amputation of her leg, alleging that it was necessitated by a blood clot due to a negligent injection of dye. The complaint was filed more than two years after the amputation, but less than two years after the plaintiff was informed of the hospital's negligence. Watkins, 78 Ill.App.3d at 469, 33 Ill.Dec. 895, 397 N.E.2d 228.
The court rejected defendant's argument that plaintiff's leg amputation was a "traumatic event" which commenced the running of the limitations period. The court observed that "classification of an injury as traumatic or nontraumatic, alone, is of no significance. * * * Courts have been holding that the more obvious the injury the more easily a plaintiff should be able to determine its cause." Watkins, 78 Ill.App.3d at 471, 33 Ill.Dec. 895, 397 N.E.2d 228, citing Berry, 56 Ill.2d at 559, 309 N.E.2d 550. Instead, the court found the discovery rule to be controlling: the limitations period does not begin to run until the injured party discovers, or should have reasonably discovered, not only the nature of the injury but also the possibility that it was wrongfully caused. Watkins, 78 Ill.App.3d at 472, 33 Ill.Dec. 895, 397 N.E.2d 228. Since the plaintiff, a known diabetic, could have reasonably believed the amputation was caused by her diabetic condition, the court held that a triable issue of fact existed to determine whether she should have discovered the defendants' negligence more than two years before the action was filed. Watkins, 78 Ill.App.3d at 472-73, 33 Ill.Dec. 895, 397 N.E.2d 228.
In Young, a decedent's widow brought a wrongful death action against treating physicians, including Dr. McKiegue. In August 1993, decedent was admitted for treatment of pneumonia. On September 3, 1993, when he was due to be discharged, decedent coughed blood and complained of shortness of breath and chest pain. Dr. McKiegue ordered an EKG and transferred decedent to intensive care. He died shortly after on September 4, 1993. Young, 303 Ill.App.3d at 382-83, 236 Ill. Dec. 907, 708 N.E.2d 493.
Plaintiff was informed that her husband died of complications from his pneumonia. The death certificate likewise indicated that cause of death was due to pneumonia and did not identify any cardiac ailment. However, plaintiff suspected inappropriate medical care because decedent died only hours after being prepared to leave the hospital. Young, 303 Ill.App.3d at 383, 236 Ill.Dec. 907, 708 N.E.2d 493. Plaintiff contacted an attorney and received decedent's medical records by December 1993. In August 1994, plaintiff received the first expert's report, which indicated that treating physicians deviated from the standard *1247 of care by failing to identify and properly treat decedent's heart attack on September 3, 1993. Plaintiff received a second expert's report in February 1995 which corroborated these findings. Young, 303 Ill.App.3d at 384, 236 Ill.Dec. 907, 708 N.E.2d 493. Plaintiff filed suit in March 1995, within two years of decedent's death. However, she did not add Dr. McKiegue as a defendant until July 1996, when he was identified as decedent's attending physician. Young, 303 Ill.App.3d at 385, 236 Ill.Dec. 907, 708 N.E.2d 493.
In determining when the statute of limitations commenced, the court found that the first expert's report in August 1994 was sufficient to place defendant on notice that decedent's death was likely caused by negligent care. Thus, the court determined that the limitations period commenced to run no later than August 1994. Young, 303 Ill.App.3d at 389, 236 Ill.Dec. 907, 708 N.E.2d 493. Although Dr. McKiegue asserted that plaintiff's suspicions of malpractice were sufficient to charge her with actual and constructive knowledge that death was wrongfully caused, the court held that an issue of fact existed as to whether plaintiff possessed the requisite knowledge before August 1994. The cause was remanded for a factual finding on this issue. Young, 303 Ill.App.3d at 389-90, 236 Ill.Dec. 907, 708 N.E.2d 493.
Like Dr. McKiegue, defendants here posit that the statute of limitations commenced at death because plaintiff initially contacted an attorney on February 27, 1996, and must have suspected negligence in order to do so. "However, when a party knows or reasonably should know that her injury was wrongfully caused does not mean when a party is suspicious that her injury was wrongfully caused." Young, 303 Ill.App.3d at 389-90, 236 Ill. Dec. 907, 708 N.E.2d 493. Rather, the trier of fact must examine the basis for plaintiff's suspicions and determine whether they would lead a reasonable person to believe that wrongful conduct was involved. Young, 303 Ill.App.3d at 390, 236 Ill.Dec. 907, 708 N.E.2d 493. Whether plaintiff should have discovered prior to receiving the expert's report on April 11, 1997, that Ashanti's death may have resulted from negligent medical care is a question to be determined by the trier of fact, based on the particular facts and circumstances of this case. Watkins, 78 Ill.App.3d at 473, 33 Ill.Dec. 895, 397 N.E.2d 228.
Moreover, it was reasonable for the plaintiff to believe that the nature of Ashanti's death was due to nonnegligent causes at the time of death. Plaintiff gave birth to a 23-week-old premature infant. Plaintiff's complaint alleged that she was told her baby died from complications due to prematurity, having an infection and low birth weight, and problems associated with blood clotting and transfusions. In light of the fact of Ashanti's extreme prematurity, it was possible for plaintiff to reasonably believe that her baby's death resulted from complications related to his premature birth. This possibility was enough to prevent her from knowing or suspecting the negligence of the defendants in dislodging or cutting the venus catheter line at the time of Ashanti's death.
Since a disputed question of fact remains as to when the statute of limitations began to run against the defendants, the court's dismissal of plaintiff's claim is reversed and the cause remanded for further proceedings consistent with this opinion.
Reversed and remanded.
CAHILL, P.J. and GORDON, J., concur.
NOTES
[1] Defendant Payton was dismissed from the suit and Dr. Baurlygen was not named as a defendant. Neither physician is a party to this appeal.