FOURTH DIVISION

FEBRUARY 7, 2002

1-01-0754

BARBARA K. HOFFMAN, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

v. )

)

ORTHOPEDIC SYSTEMS, INC., ) Honorable

) Sophia H. Hall,

Defendant-Appellee. ) Judge Presiding.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff, Barbara K. Hoffman, brought this action against defendants, Dr. F. Todd Wetzel, Louis A. Weiss Memorial Hospital (Weiss Hospital), an Illinois not-for-profit corporation, and Orthopedic Systems, Inc. (OSI), a Delaware corporation manufacturing medical products, for injuries she sustained during the performance of back surgery.  Plaintiff's amended complaint alleged two counts against OSI for strict liability and negligence.  Her actions against Weiss Hospital and Dr. Wetzel were voluntarily dismissed.  

Following plaintiff's deposition, OSI moved for summary judgment under Code of Civil Procedure (Code) sections 2-1005 (735 ILCS 5/2-1005 (West 2000)), 13-202 (735 ILCS 5/13-202 (West 2000)) and 13-213 (735 ILCS 5/13-213 (West 2000)), asserting that plaintiff's complaint was time-barred by the two-year statute of limitations, which motion the circuit court granted.  Plaintiff appeals, raising the issue of whether the court erred by granting OSI's summary judgment motion by construing the discovery rule improperly.

On September 27, 1995, plaintiff underwent back surgery, which included a decompression of the L4-5 and L3-4 discs in her spine, reexploration of a prior spinal decompression, a laminectomy at the L3-4 vertebrae, a bilateral facetectomy at the L4-5 vertebrae and a bilateral foraminotomy at the L3-4 and L4-5 vertebrae.
(footnote: 1)  Dr. Wetzel, who performed the surgery at Weiss Hospital, first explained to plaintiff that the procedure was to be fairly simple, would last for one and one-half hours and would relieve pressure on the L3, L4 and L5 areas of the spine.    

Prior to the surgery, plaintiff was positioned on an Andrews Spinal Surgery Table (Andrews Table), Model SST-3000™, a table designed, manufactured and sold by OSI, which is used to position patients for spinal surgery with their hips flexed and in a kneeling position at a 90-degree angle.

By deposition, plaintiff testified that after being prepared for back surgery, she next remembered waking up in the intensive care unit, where nurses told her that she had hepatitis, causing her nausea.  Doctors informed plaintiff that she had liver failure, kidney failure, gastrointestinal bleeding, pneumonia, a heart arrhythmia and septicemia.  Dr. Michael Berger, an internist, and Dr. Nelson Kanter, a pulmonary specialist, told plaintiff that "everything that could go wrong went wrong."  Plaintiff's renal physician told her that she was "very, very sick," and that she was "never going to be the same again, ever."  According to plaintiff, following her surgery, "nobody expected me not to die."  Dr. Wetzel repeatedly stated in front of plaintiff that he was glad she did not die.   

During her recovery, plaintiff underwent temporary kidney dialysis, from which she suffered hallucinations, and had seven blood transfusions within two weeks.  When plaintiff asked for an explanation for her near-death experience, she was given "a different story from everybody," and was told, "shit happens."  Dr. Wetzel told plaintiff that her complications were due to the anesthesia she was given prior to surgery.  Nurses, residents or whomever came into her hospital room told plaintiff that a monitor alarm went off during surgery, her blood pressure dropped and doctors had trouble "getting a vein or artery in order to give [plaintiff] the stuff to push it back up."  She was told the monitor was broken.  Plaintiff was discharged from the hospital on October 19, 1995.   

After release from the hospital, plaintiff could not leave her home for two or three months.  Thereafter, she underwent continued physical therapy and rehabilitation.  

Prior to the surgery, plaintiff had retained a law firm, Harvey L. Walner and Associates, to handle the accident claim against the CTA, resulting in a back pain claim, precipitating the September 27, 1995 surgery.  On October 28, 1995, as part of the investigation into the accident, plaintiff's attorney sent a letter requesting Weiss Hospital to forward her medical records in order to determine the nature and extent of her injuries.  Plaintiff recovered a $2,500 settlement from the CTA.  According to plaintiff, about four to six months after the surgery, she asked her attorney "to look into whether or not there was any doctor malpractice relating to what had happened" with respect to the 1995 surgery. 

On April 23, 1998, plaintiff returned to Weiss Hospital to undergo knee surgery.  When she expressed reluctance regarding the general anesthesia she was to receive, citing her previous experience, Dr. William Conrad, an anesthesiologist, informed her that an internal hospital investigation of the September 27, 1995 surgery led doctors to conclude that the Andrews Table caused her complications.  Dr. Conrad explained that during the surgery, she was placed on the Andrews Table on her knees, bent at the waist, with her sternum area resting on a bar called the Autoglide Torso Lift™.  Dr. Conrad told plaintiff that at some point during the surgery, the bar moved to plaintiff's stomach, under her rib cage, with her body weight slowly pushing down on the bar and crushing her liver during the surgery, resulting in the complications she suffered.  The investigation did not determine whether the bar slipped into the questionable position or originally was placed in that position prior to surgery.
(footnote: 2)  

After learning that the Andrews Table caused her injuries, plaintiff filed a complaint on May 7, 1998, alleging that the operating table was not reasonably safe in design or manufacture, was defective and that its defects caused her injuries.  As previously noted, plaintiff also named Weiss Hospital and Dr. Wetzel in her complaint, alleging that they had caused her injuries by failing to position her properly and to monitor her position on the Andrews Table. 

On November 22, 2000, OSI moved for summary judgment, arguing that plaintiff's action was time-barred by the two-year statute of limitations, which two-year period OSI contended began on the date of her surgery.  The circuit court granted OSI's summary judgment motion on February 21, 2001, finding that the lawsuit was filed beyond the applicable statute of limitations.  Plaintiff appeals.

Plaintiff asserts that summary judgment in this case was improper, because the statute of limitations does not commence until the claimant is aware of the injury and its source and that a genuine issue of material fact exists as to when plaintiff knew or should have known that her injury was wrongfully caused.

Summary judgment "shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  735 ILCS 5/2-1005 (West 2000).
 
 In deciding a summary judgment motion, the circuit court must construe the pleadings, affidavits, depositions and admissions on file strictly against the moving party and liberally in favor of the opponent.  
In re Estate of Hoover
, 155 Ill. 2d 402, 410-11, 615 N.E.2d 736 (1993).  Summary judgment on statute of limitations grounds is appropriate.  
Witherell v. Weimer
, 85 Ill. 2d 146, 156, 421 N.E.2d 869 (1981) (
Witherell
).  The discovery rule for which plaintiff contends applies only where it is apparent from the undisputed facts that plaintiff knew or reasonably should have known of the injury and its wrongful causation more than two years prior to bringing the action.  
Witherell
, 85 Ill. 2d at 156
.  A reviewing court exercises 
de novo
 review when determining whether the court below properly granted a motion for summary judgment.  
Zoeller v. Augustine
, 271 Ill. App. 3d 370, 374, 648 N.E.2d 939 (1995).

Generally, a statute of limitations begins to run when the party to be barred has a right to invoke the aid of the court to enforce a remedy.  
Benyon Building Corp. v. National Guardian Life Insurance Co.
, 118 Ill. App. 3d 754, 762, 455 N.E.2d 246 (1983).  The primary purposes of the statute of limitations are to require prosecution of a right of action within a reasonable time to prevent loss or impairment of available evidence and to discourage delay in the initiation of claims.  
Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.
, 61 Ill. 2d 129, 132, 334 N.E.2d 160 (1975).

Product liability actions, as in the instant case, must be filed within two years after "a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused."  See 735 ILCS 5/13-202 (West 2000); 
Nolan v. Johns-Manville Asbestos
, 85 Ill. 2d 161, 171, 421 N.E.2d 864 (1981)
. Here, plaintiff contends that (1) the discovery rule tolled the statute of limitations; (2) her suspicion of wrongful causation was not enough to satisfy the "knew or should have known" threshold; and (3) she had no knowledge of the causal relationship between her injury and the conduct of the defendant. 

In Illinois, the discovery rule is applied on a case-by-case basis, weighing the relative hardships of applying the rule to both plaintiff and defendant.  
Hermitage Corp. v. Contractors Adjustment Co.
, 166 Ill. 2d 72, 78, 651 N.E.2d 1132 (1995).  The discovery rule was created to alleviate the harsh consequences that flow from the literal application of the limitations statutes.  
Golla v. General Motors Corp.
, 167 Ill. 2d 353, 360, 657 N.E.2d 894 (1995) (
Golla
). 

To determine when a plaintiff reasonably should have discovered that an injury was caused by defendant's wrongful conduct, courts look to the nature of the injury itself; the more obvious the injury, the more easily a plaintiff should be able to determine its cause.  
Hauk v. Reyes
, 246 Ill. App. 3d 187, 192, 616 N.E.2d 358 (1993); 
Pszenny v. General Electric Co.
, 132 Ill. App. 3d 964, 966, 478 N.E.2d 485 (1985) (
Pszenny
); 
Kristina v. St. James Hospital
, 63 Ill. App. 3d 810, 813, 380 N.E.2d 816 (1978) (
Kristina
).  In 
Golla
, the supreme court noted that when an injury is caused by a sudden, traumatic event, the cause of action accrues and the statute of limitations begins to run on the date the injury occurs.  167 Ill. 2d at 362.  A "traumatic injury" occurs when "the damage is caused by external violence."
(footnote: 3)  
Roper v. Markle
, 59 Ill. App. 3d 706, 711, 375 N.E.2d 934 (1978) (
Roper
).  A traumatic event alone puts plaintiff on notice of a reasonable possibility that the injury was wrongfully caused (
Hutson v. Hartke
, 292 Ill. App. 3d 411, 413, 686 N.E.2d 734 (1997)), because "the nature and circumstances surrounding the traumatic event are such that the injured party is thereby put on notice that actionable conduct might be involved."  
Golla
, 167 Ill. 2d at 363.

There is no requirement that a plaintiff must discover the full extent of his or her injuries before the statute of limitations begins to run.  
Golla
, 167 Ill. 2d at 363, 365-68.  The limitations period begins to run when plaintiff becomes aware that the cause of the problem stems from another's negligence and not from natural causes because it would be "manifestly unrealistic and unfair to bar a negligently injured party's cause of action before [a plaintiff] has had an opportunity to discover that it exists ***."  
Roper
, 59 Ill. App. 3d at 715; 
Kristina
, 63 Ill. App. 3d at 813.

Here
, the injuries plaintiff sustained cannot be categorized as another manifestation of a preexisting condition.  See 
Pszenny
, 132 Ill. App. 3d at 967; 
Watkins v. Health & Hospitals Governing Commission
, 78 Ill. App. 3d 468, 472-73, 397 N.E.2d 228 (1979). Plaintiff had two prior back surgeries, one of which resulted in complications such as paralysis and spinal cord swelling, relating to the nature of her back problems.  The record shows no evidence of prior adverse or allergic reactions to anesthesia from any of plaintiff's previous surgeries.  The injuries plaintiff suffered from her September 27, 1995 surgery were unrelated to any preexisting condition.  She was told by Drs. Berger and Kanter, soon after the surgery, that "everything that could go wrong went wrong."  

Significantly, plaintiff retained an attorney within six months of her 1995 operation, demonstrating that she then was on  inquiry as to whether the injury was wrongfully caused, thereby commencing the two-year limitations period within which to take appropriate legal action.  Her own reported conversations with medical personnel and her retention of an attorney to investigate demonstrated that she knew she had suffered an injury and that the injury may have been wrongfully caused.  
Golla
, 167 Ill. 2d at 363, 365-68.  Other than her attorney's letter to Weiss Hospital requesting medical records, however, the record does not contain evidence showing an investigation as to whether any malpractice had been committed.  Although her suspicion of wrongful causation was limited to an investigation as to whether medical malpractice was committed, rather than whether a product liability action existed, as the cases hold, the term, "wrongfully caused," does not mean knowledge by plaintiff of a specific defendant's negligent act or knowledge that an actionable wrong was committed; rather, a person knows or reasonably should know an injury is "wrongfully caused" when he or she possesses "sufficient information concerning [an] injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved."  
Knox College v. Celotex Corp.
, 88 Ill. 2d 407, 416, 430 N.E.2d 976 (1981); 
Moore v. A.H. Robins Co.
, 167 Ill. App. 3d 19, 23, 520 N.E.2d 1007 (1988).  At that point, the burden is upon plaintiff to inquire further as to the existence of a cause of action.  
Witherell
, 85 Ill. 2d at 156.

Plaintiff's failure to pursue a more thorough inquiry to find the cause of her injuries does not excuse her from failing to comply with the statute of limitations.  Plaintiff could have attempted to obtain the results of the hospital's investigation of this incident, with appropriate further investigation by her attorneys, particularly since Dr. Conrad voluntarily divulged its conclusions.

The circuit court did not err by granting summary judgment in favor of defendant on a statute of limitations ground under the circumstances presented by this record.  It would be manifestly unjust to visit a stale claim upon a putative defendant by reason of inadequate investigative procedures, particularly where the Code and Supreme Court Rules provide substantial avenues of inquiry to a plaintiff who knew that the potential for wrongdoing could have been the cause of her  injuries.  See, 
e.g.
, 735 ILCS 5/2-402, 2-1113 (West 2000); 
166 Ill. 2d R. 201, 202; 177 Ill. 2d R. 213.
(footnote: 4)
 Affirmed.

HOFFMAN, P.J., and THEIS, J., concur.

FOOTNOTES
1:
By deposition, plaintiff testified that she had a history of back problems that began with a hospitalization in 1972 and later was diagnosed as a herniated disc by her doctor, requiring bed rest.  Plaintiff was hospitalized again in 1982 or 1983 for back problems.  In 1984, plaintiff had back surgery, a laminectomy, at the L2-3 vertebrae.  She suffered complications from the surgery, including paralysis and swelling of her spinal cord.  Plaintiff recovered after receiving steroid and physical therapy.  Plaintiff was in pain once more in 1993, which was not relieved by steroid and physical therapy.  In December 1994, Dr. Wetzel performed an experimental surgery, a 360-degree spinal fusion that fused together three discs and two vertebrae.  Pain began in plaintiff's upper back in August 1995, following an accident involving a Chicago Transportation Authority (CTA) bus, wherein a myelogram revealed that a bone had overgrown a nerve in plaintiff's back.  Prior to the accident, plaintiff had no previous problems with her upper spine.

Plaintiff also suffered from clinical depression, causing her to attempt suicide in 1990.  She was hospitalized and, thereafter, received weekly medical attention and medication for her depression.

2:
Plaintiff's medical records and Weiss Hospital's internal investigation concluding that plaintiff's injuries were caused by the Andrews Table are not in the record.

3:
Examples of injuries held to be "traumatic" include: blindness caused by an uncontrolled flow of oxygen (
Ikenn v. Northwestern Memorial Hospital
, 73 Ill. App. 3d 694, 392 N.E.2d 440 (1979)); stroke and paralysis resulting from the ingestion of birth control pills (
Berry v. G.D. Searle & Co.
, 56 Ill. 2d 548, 309 N.E.2d 550 (1974)); injuries suffered when plaintiff was pinned beneath a forklift truck (
Bates v. Little Co. of Mary Hospital
, 108 Ill. App. 3d 137, 438 N.E.2d 1250 (1982)); and paralysis resulting from an automobile accident and subsequent medical treatment (
Urchel v. Holy Cross Hospital
, 82 Ill. App. 3d 1050, 403 N.E.2d 545 (1980)).

4:
At oral argument, plaintiff's counsel's assertions that a section 2-622 (735 ILCS 5/2-622 (West 2000)) affidavit would have been impossible to secure, prior to filing a timely lawsuit, must be rejected in light of the observations medical personnel made to plaintiff soon after the operation was completed.