2020 IL App (1st) 190321-U

No. 1-19-0321

Order filed July 31, 2020

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | |
|---|---|
| TYRONE MOORE, | ) |
| | ) Appeal from the |
|    Plaintiff-Appellant, | ) Circuit Court of |
| | ) Cook County. |
|   v. | ) |
| | ) No. 15 L 011893 |
| MOUNT SINAI HOSPITAL MEDICAL CENTER OF | ) |
| CHICAGO, THE MOUNT SINAI COMMUNITY | ) Honorable |
| FOUNDATION d/b/a SINAI MEDICAL GROUP, SINAI | ) Christopher R. Lawler, |
| MEDICAL GROUP, LTD., STEPHEN R. WISE, M.D., | ) Judge, Presiding. |
| MEDTRONIC, INC., | ) |
| | ) |
|   Defendants, | ) |
| | ) |
| (Medtronic, Inc., Defendant-Appellee). | ) |

_____

JUSTICE HALL delivered the judgment of the court.
Presiding Justice Hoffman and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Plaintiff's product liability claim against defendant was time-barred by the two-year statute of limitations which began to run when plaintiff knew or should have known that his injury was wrongfully caused.

¶ 2     Plaintiff, Tyrone Moore (Moore), appeals from an order of the circuit court which granted

defendant, Medtronic, Inc.'s (Medtronic), motion to dismiss based upon the two-year statute of

limitations applicable to product liability claims. For the reasons that follow, we affirm the circuit court's opinion.

¶ 3                                    BACKGROUND

¶ 4      In October of 2013, Moore sought medical treatment from Stephen Wise, M.D. for a possible repair of his ventral hernia. Upon examination, Dr. Wise diagnosed Moore with a reducible umbilical hernia and scheduled the hernia repair to take place at Mount Sinai Hospital Medical Center of Chicago (Mt. Sinai Hospital). On November 20, 2013, Moore underwent a laparoscopic ventral hernia repair of a six-by-six-centimeter hernia defect by Dr. Wise. Dr. Wise used a hernia mesh to repair Moore's hernia which was manufactured and sold by Covidien at the time of Moore's surgery. Covidien was subsequently purchased by Medtronic.

¶ 5      After discharge, Moore experienced vomiting, the inability to have a bowel movement and the inability to pass gas, which continued to worsen. On November 23, 2013, Moore contacted Dr. Wise who advised him to go to the emergency room and Dr. Wise would meet him. On December 1, 2013, Moore underwent a diagnostic laparoscopy by Dr. Wise which revealed that there was a small bowel mesentery incarcerated in a hole in the mesh that was used to repair Moore's hernia.

¶ 6      On November 20, 2015, Moore filed his original complaint alleging medical malpractice against numerous healthcare providers, including Mt. Sinai Hospital, The Mount Sinai Community Foundation d/b/a Sinai Medical Group (Sinai Medical Group), and Dr. Wise, based upon his hernia repair surgery performed on November 20, 2013, and his subsequent care and treatment. The original complaint alleged that, "on December 1, 2013, the Plaintiff, TYRONE MOORE underwent a diagnostic laparascopy, which showed that there was small bowel mesentery incarcerated in a hole in the mesh that was used to repair the hernia." It also alleged that, "during

2

the December 1, 2013, procedure, the mesentery and associated bowel were reduced. Supramesh was placed over the hole in the mesh and it was secured to the abdominal wall."

¶ 7    On August 3, 2016, Moore filed his first amended complaint, in which he voluntarily dismissed all defendants, except Mt. Sinai Hospital and its associated entities and Dr. Wise. The complaint was accompanied by a report completed by a medical professional attesting to the merits of Moore's medical malpractice allegations pursuant to section 2-622 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-622 (West 2016)). The author of the report was Christopher S. Pruett, M.D., a laparoscopic and general surgeon, and Moore's retained expert. In his report, Dr. Pruett opined that he had reviewed Moore's Mt. Sinai Hospital medical records and in his medical opinion, "[t]he discharge summary by Don Teed, M.D. documents that the stat CT scan on 11/23/13 revealed that there was a portion of small bowel mesentery possibly protruding through the mesh." His report also indicated that, "[o]n 12/1/13 the patient underwent a diagnostic laparoscopy, reduction of small bowel mesentery from hole in mesh. Again, the surgery was performed by Stephen Wise, M.D. at Mount Sinai Medical Center and the surgical technique was dictated by resident surgeon Dahlia Tawfik-Sexton, M.D. The findings revealed small bowel mesentery incarcerated in 2X2 defect within mesh." Dr. Pruett's impression was that, "[t]he surgical technique utilized by Stephen Wise, M.D. and the attending doctors at Mount Sinai Medical Center, on 11/20/13, created a hole in the mesh designed to repair the ventral hernia, allowed the small bowel to incarcerate and constituted a deviation from the standard of care."

¶ 8    The parties engaged in discovery, and on November 23, 2016, Dr. Wise filed his answers to Moore's interrogatory requests. In his answers Dr. Wise stated that to the best of his knowledge, no inquiry, investigation, hearing or other procedure was conducted to obtain details of the events

3

set forth in Moore's complaint, and directed Moore to his medical records in response to a request for a description of the nature and reason for his injuries.

¶ 9    On July 14, 2017, Dr. Wise was deposed. Dr. Wise testified that he did not believe that the hole in the mesh was caused by "anything that occurred intraoperatively because…I had an adequate look at the mesh up until the time of the termination of the procedure, and there was not a hole in it." He testified that he had never used this mesh material previously and did not use it after Moore's November 20, 2013, hernia surgery, "because of the problem [he] perceived with central mesh failure."

¶ 10    On April 20, 2018, Dr. Tawfik-Sexton, Dr. Wise's resident at the time of Moore's surgery was deposed.  She testified that she did not know how the hole in the mesh occurred and did not know possible causes for the hole in the mesh.

¶ 11    On May 1, 2018, Moore filed a second amended complaint, adding a product liability claim against Medtronic. Moore alleged that "on and prior to November 20, 2013," Covidien "did design, manufacture, distribute, sell and/or place into the stream of commerce a certain hernia mesh product," and that in January of 2015, Medtronic purchased Covidien. He also alleged that on November 20, 2013, Dr. Wise used the hernia mesh product during his surgery to repair his ventral hernia. Moore further alleged that, "the hernia mesh was not reasonably safe for its intended use, in that it could and did experience central mesh failure[;] * * * it was unreasonably dangerous[;] * * * and * * * proximately cause[d] [him] * * * to develop complications which led to multiple organ failure."

¶ 12    On June 6, 2018, Medtronic filed a motion to dismiss pursuant to sections 2-619(a)(5) and 2-615 of the Code (735 ILCS 5/2- 615, 2-619(a)(5) (West 2018)), seeking dismissal of Moore's

claim because it was time-barred by the two-year statute of limitations and that he failed to state a cause of action against it.[1]

¶ 13   Medtronic argued that the statute of limitations for filing a product liability claim against it had expired on November 20, 2015, two years after Moore's initial hernia surgery. It argued that Moore knew or had reason to know of his injury on November 20, 2013, at the earliest, or arguably, when he consulted an attorney to investigate any potential claims arising out of his hernia repair surgery in November of 2015, at the latest. Thus, when Moore filed his second amended complaint on May 1, 2018—nearly four-and-a-half years after the surgery at issue—naming Medtronic as a defendant, it was time-barred.

¶ 14   Moore argued in response that based upon the discovery rule, applicable case law and section 13-213(d) of the Code (735 ILCS 5/13-213(d) (West 2018)), the statute of limitations for his product liability claim against Medtronic did not accrue until it was discovered during Dr. Wise's deposition, on July 14, 2017, that the hernia mesh could have been a cause of his injury. Therefore, Moore argues, the two-year statute of limitations did not expire until July 14, 2019. Moore also argued that he had sufficiently stated a claim for products liability.

¶ 15   On June 29, 2018, Moore filed a third amended complaint, to resolve issues raised in separate motions brought by defendants, Mt. Sinai Hospital, Sinai Medical Group and Dr. Wise. His allegations against Medtronic remained the same.

¶ 16   On October 25, 2018, the circuit court denied Medtronic's section 2-615 motion to dismiss stating that, "[t]aking all well-pleaded facts as true at this time, Moore pleaded sufficient facts to state a claim for strict products liability." However, the court granted Medtronic's section 2-

---

[1] The circuit court granted Medtronic's motion to dismiss based upon the statute of limitations only. Therefore, only arguments related to the statute of limitations will be addressed here.

619(a)(5) motion to dismiss based upon the statute of limitations. In its order, the court stated, "[t]he record shows that Moore returned to the hospital in early December 2013 to treat complications from a procedure in which Wise used Medtronic's wiring. It is on or around that time that he knew or should have known that he was injured." The court noted that, "Moore filed his original complaint in November 2015. But Moore did not name Medtronic as a defendant until his third amended complaint in May 2018, nearly four and a half years after the alleged injury." The court ruled that, "[v]iewed in a light most favorable to Moore * * * Moore's claims against Medtronic are therefore time-barred."

¶ 17    On February 4, 2019, the circuit court denied Moore's motion to reconsider. On that same date, Moore filed a motion for leave to file an interlocutory appeal, which was granted on February 15, 2019, pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), and found that there was no just reason for delaying appeal of its orders dismissing Medtronic based upon its orders of October 25, 2018, and February 4, 2019. Moore filed the instant timely appeal.[2]

¶ 18                                        ANALYSIS

¶ 19    On appeal, the parties do not dispute that the statute of limitations applicable to Moore's claims is two years. Moore contends that his claim against Medtronic was not time-barred by the two-year statute of limitations period because his claim was tolled and did not accrue until Dr. Wise was deposed on July 14, 2017; thus, his products liability claim was timely filed on May 1, 2018. He argues that his delay in bringing his product liability suit was not due to any lack of diligence on his part nor on the part of his attorneys. Rather, it was due to a lengthy recovery period and the fact that he was unaware that central mesh failure was a potential proximate cause of his

_____

[2] This case was fully briefed on September 9, 2019, and assigned to the authoring justice's inventory of cases on September 10, 2019.  The authoring justice first circulated a proposed disposition to Justice Hoffman and Justice Rochford on July 22, 2020.

injuries, until Dr. Wise was deposed. Moore contends that Dr. Wise did not disclose a possible mesh failure in his answers to interrogatories, and his expert's review of over 2049 pages of medical records was devoid of any explicit or inferential statement that would have led him to discover that the hernia mesh could have proximately caused his injuries.

¶ 20 Similar to its argument in the circuit court, Medtronic responds that the statute of limitations on Moore's claim began to run at the earliest, when he underwent his hernia surgery on November 20, 2013, and at the latest, when he consulted an attorney, in November of 2015, and filed his original complaint.

¶ 21 The dismissal of a complaint pursuant to section 2–619 of the Code (735 ILCS 5/2-619 (West 2018)) is reviewed *de novo*. *Doe v. University of Chicago Medical Center*, 2015 IL App (1st) 133735, ¶ 35. We accept as true all well-pleaded allegations in the complaint and draw all reasonable inferences in favor of plaintiffs. *Id.* Because our review is *de novo,* we need not defer to the circuit court's reasoning. *Platinum Partners Value Arbitrage Fund, Ltd. Partnership v. Chicago Board Options Exchange,* 2012 IL App (1st) 112903, ¶ 12. The circuit court's judgment may, therefore, be affirmed for any reason, and upon any ground warranted. *Riley Acquisitions, Inc. v. Drexler,* 408 Ill. App. 3d 397, 404 (2011).

¶ 22 The statute of limitations for products liability actions is delineated in section 13-213(c) of the Code which provides in relevant part:

> "(c), the plaintiff may bring an action within 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, of the existence of the personal injury, death or property damage, but in no event shall such action be brought more than 8 years after the date on which such personal injury, death or property damage occurred." 735 ILCS 5/13-213(c) (West 2018).

¶ 23 The plain language of the statute incorporates the discovery rule and serves to "postpone the commencement of [the] applicable limitations period until the plaintiff knows or should have

known that she is injured and that such injury may have been wrongfully caused." *Golla v. General Motors Corporation,* 167 Ill. 2d 353, 361 (1995). In Illinois, the discovery rule is applied on a case-by-case basis, weighing the relative hardships of applying the rule to both plaintiff and defendant. *Hermitage Corp. v. Contractors Adjustment Co.,* 166 Ill. 2d 72, 78 (1995).

¶ 24    The phrase wrongfully caused "does not mean knowledge of a specific defendant's negligent act or knowledge that an actionable wrong was committed; rather, a person knows or reasonably should know an injury is 'wrongfully caused' when he or she possesses 'sufficient information concerning [an] injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved.' " *Hoffman v. Orthopedic Systems, Inc.*, 327 Ill. App. 3d 1004, 1011 (2002) (quoting *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 416 (1981)). At that point, it becomes the burden of the injured party to inquire further and determine the existence of an applicable cause of action. *Id.* Illinois courts have elucidated the "wrongfully caused" standard of the discovery rule and distilled it down to two elements—cause and wrongfulness. *Mitsias v. I-Flow Corporation*, 2011 IL App (1st) 101126, at ¶ 22.

¶ 25    "With regard to the first element, plaintiff must have sufficient information to conclude that her injury was caused by the acts of another." *Id.*,  (citing *Nolan v. Johns–Manville Asbestos*, 85 Ill. 2d 161, 169 (1981)). Under the wrongfulness element, "an injured plaintiff should reasonably know that her injury is wrongfully caused, and the statute of limitations begins to run, as soon as she has sufficient information about her injury and its cause to spark inquiry in a reasonable person as to whether the conduct of the party who caused her injury might be legally actionable." *Id.* at ¶ 23 (citing *Knox*, 88 Ill. 2d at 416). However, "[k]nowledge of 'wrongful cause' does not require knowledge on the part of plaintiff that the defendant's conduct fits the technical legal definition of negligence or that all the legal elements of a particular cause of action are

otherwise satisfied." *Id.* at ¶ 24. Rather, it requires "that the plaintiff is or should be aware of some possible fault on the part of the defendant" *Id.*

¶ 26    Under Illinois law, whether an action was brought within the time allowed by the discovery rule is usually a question of fact. *See Clay v. Kuhl*, 189 Ill. 2d 603, 609-10 (2000). The issue may be determined as a matter of law, however, when the answer is clear from the record. *Id.*

¶ 27    In this case, Moore timely filed his original complaint, which did not name Medtronic as a defendant, on November 20, 2015, which confirms that he knew that he had an injury which was wrongfully caused by the acts of another by that date.  See *Clay*, 189 Ill. 2d at 611 (citing *Nolan*, 85 Ill. 2d at 169). Although Medtronic concedes on appeal that, arguably, pursuant to the discovery rule, the commencement of the running of the statute of limitations could have been postponed until November 20, 2015, it argues that the discovery rule would not save Moore's claims against it because it was filed in May of 2018, over two years after Moore filed his original complaint.

¶ 28    Moore disagrees and contends that although he did have sufficient knowledge to know that a cause of action had accrued as to the hospital and physician defendants on November 20, 2015, he did not know nor reasonably could have known that his injury was wrongfully caused by Medtronic on that date. Put another way, although he knew he had an injury on or before November 20, 2015, that was possibly wrongfully caused by the hospital and physician defendants, he did not know, nor could he have ascertained through reasonable diligence, that this injury was possibly wrongfully caused by an hernia mesh failure on that date. Thus, relying on this court's reasoning and holding in *Mitsias*, Moore argues that his product liability claim against Medtronic is not time-barred because the discovery rule tolled the statute of limitations until Dr. Wise was deposed on July 14, 2017.

¶ 29    In *Mitsias*, this court addressed a single issue, "how the discovery rule is applied when a plaintiff is aware that her injury might have been wrongfully caused by one source but is unaware that her injury might have been caused by another source and, in fact, could not be aware of that source because the causal link was as yet unknown to science. *Mitsias,* 2011 IL App (1st) 101126, ¶ 19. In that case, the plaintiff originally filed a medical malpractice complaint against the surgeon who performed a procedure on her left shoulder. *Id. at* ¶ 2. During discovery, plaintiff's expert was deposed and testified that "recently published medical literature" had suggested a link between a "pain pump" used during the surgery and the plaintiff's injury. *Id.* The plaintiff, therefore, added product liability claims against the manufacturer of the pain pump, but those claims were dismissed by the circuit court as having been untimely filed. *Id.* ¶¶ 3–4.

¶ 30    On appeal, this court concluded that the statute of limitations for the plaintiff's product liability claims did not begin to run until she could have discovered that her injury might have been caused by the pain pump, because the "plaintiff could not have known of any potential product liability cause of action against the pain pump manufacturers while the causal link between her injury and the pain pump used upon her was not scientifically discoverable." *Id.* ¶¶ 29, 31. This court held that "where a plaintiff knows or should reasonably know that her injury was caused by one source, but remains unaware of another source that could not be discovered through the exercise of diligent inquiry, the statute of limitations does not begin to run with regard to that second source until such time as that second source would become discoverable through diligent inquiry." *Id.* ¶ 31.

¶ 31    We find that the issues, reasoning and holding in *Mitsias*, were narrowly framed, analyzed and decided based upon the facts of that case, and are inapposite to the facts in this case. Unlike the instant case, *Mitsias* involved a consideration of the proper application of the discovery rule

where a plaintiff "is unaware that her injury might have been caused by another source * * * because the causal link was as yet unknown to science" *Id.* at ¶ 19. It does not stand for the broad proposition – as Moore urges by partially citing to a sentence in *Mitsias* – that in all circumstances, if a plaintiff has discovered one cause of her injury, but has not discovered a second cause, the statute of limitations is tolled as to that second claim until such time as there are others who can tell her if she has been wronged as to the second claim. See *Mitsias*, 2011 IL App (1st) 101126, ¶ 28. The *Mitsias* court was specific that its determination applied to circumstances where a "plaintiff is aware of one potential wrongful cause of her injury, but she does not yet know, nor could [he or] she reasonably discover, a second potential wrongful cause, because the state of our scientific knowledge is as yet inadequate to unearth that second cause." *Id.* The *Mitsias* court reasoned that "[p]ermitting knowledge of the one to trigger the discovery rule as to the other would seem to defeat the policy and purpose behind the discovery rule, which is to accommodate the need of the victim, upon reasonable inquiry, to discover her cause of action against a defendant who has wronged her." *Id.*

¶ 32    Here, Moore has not pled nor has he asserted that he was unaware that his injury might have been caused by the hernia mesh or that he could not have been aware because the causal link was undiscoverable and yet unknown to science. See *Softcheck v. Imesch*, 367 Ill. App. 3d 148, 155 (2006), (citing *Clay,* 189 Ill. 2d at 613 (the plaintiffs' claims may survive if they have pled sufficient facts to invoke the discovery rule.)). Therefore, the facts in *Mitsias* are inapposite to the facts in this case.

¶ 33    The facts in *Wells v. Travis*, 284 Ill. App. 3d 282 (1996), which was distinguished by the *Mitsias* court, are analogous to the facts in this case. In *Wells*, following the death of the decedent, plaintiff filed her original medical malpractice suit against the first physician, attaching her section

11

2-622 expert report which opined that the first physician had committed malpractice but a second physician had not. *Id*. at 284. During discovery, experts of the first physician opined that the second physician was at fault; thus, plaintiff amended her complaint by adding the second physician. *Id*. at 285. The second physician filed a motion to dismiss plaintiff's complaint against him as time-barred, which was granted, and affirmed by this court. *Id*.

¶ 34 On appeal, this court held that, as a matter of law, the statute of limitations period commenced as soon as plaintiff received the report from her expert which implicated the first physician and exonerated the second physician. *Id.* at 292. The *Wells* court reasoned that the plaintiff's interpretation of the discovery rule that "a person is not charged with knowledge sufficient to trigger the running of the limitations period as to any particular defendant until the person knows or reasonably should know that the injury was wrongfully caused by the negligence *of that defendant" was* "expressly disavowed" by the supreme court in *Knox* (*Knox College v. Celotex Corp.*, 88 Ill. 2d 407 (1981)). *Id.* at 287. The court held that "[i]nstead, * * * the statute of limitations begins to run when 'the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved.' " *Id.* The *Wells* court stated, "[W]e will not create an exception to the statute of limitations because plaintiff elected to rely on the opinion of her chosen expert rather than continuing her investigation." *Id.* at 292.

¶ 35 The *Mitsias* court interpreted the holding in *Wells* to mean that "if plaintiff had continued her investigation, she might have been able to uncover evidence implicating the second physician in decedent's death within the statutory period." *Mitsias*, 2011 IL App (1st) 101126, ¶ 38, (citing *Wells,* 284 Ill. App. 3d at 292). The *Mitsias* court distinguished *Wells* and reasoned that "it does not run contrary to our holding that, where a plaintiff knows or should reasonably know one cause

of her injury, but another cause remains both undiscovered and undiscoverable, the statute of limitations with regard to that second cause is tolled until such time as that second cause would become discoverable." *Id.*

¶ 36   Based upon the foregoing, Moore's argument that his cause of action against Medtronic was tolled is premised upon an improper application of the discovery rule. Although the information that prompted Moore to file a product liability claim against Medtronic was gleaned from Dr. Wise's deposition in July of 2017, the running of the statute of limitations is not dependent upon a plaintiff's knowledge of a specific defendant's conduct or knowledge of the existence of a specific cause of action (see *Hoffman v. Orthopedic Systems, Inc.*, 327 Ill. App. 3d 1004 (2002), (quoting *Knox*, 88 Ill. 2d at 416)); instead, the statute of limitations is triggered by that point in time when the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved (*Hoffman v. Orthopedic Systems, Inc.*, 327 Ill. App. 3d 1004 (2002), (quoting *Knox*, 88 Ill. 2d at 416)). "Knowledge of 'wrongful cause' does not require knowledge on the part of plaintiff that the defendant's conduct fits the technical legal definition of negligence or that all the legal elements of a particular cause of action are otherwise satisfied." *Mitsias*, 2011 IL App (1st) 101126, at ¶ 24.

¶ 37   Rather, it requires "that the plaintiff is or should be aware of some possible fault on the part of the defendant." *Id.*

¶ 38   Contrary to Moore's argument, the relevant inquiry for the discovery rule and the commencement of the relevant statute of limitations is thus not when he knew or should have known there was a potential cause of action against Medtronic for product liability, but rather, the relevant inquiry is when he knew or should have known that his injury was potentially wrongfully

caused. As initially noted, Moore does not dispute the circuit court's finding that he knew or reasonably should have known that his injury occurred in December of 2013 when he returned to Mt. Sinai to treat complications from the hernia procedure in which Dr. Wise used Medtronic's mesh product. The court noted that, "Moore filed his original complaint in November 2015. But Moore did not name Medtronic as a defendant until his third amended complaint in May 2018, nearly four and a half years after the alleged injury." This fact supports the conclusion that Moore knew or had reason to know that his injury was wrongfully caused at the very latest when he filed his complaint on November 20, 2015. In addition, Moore's complaint alleged that "on December 1, 2013" he "underwent a diagnostic laparascopy, which showed that there was small bowel mesentery incarcerated in a hole in the mesh that was used to repair the hernia." Based upon the foregoing, Moore knew or reasonably should have known that his injury was wrongfully caused on or before November 20, 2015, and should have filed his claim against Medtronic by November of 2017. We agree with the circuit court's determination that Moore's claims against Medtronic were time-barred.

¶ 39                           CONCLUSION

¶ 40    For the foregoing reason, we affirm the decision of the circuit court of Cook County.

¶ 41    Affirmed.