2026 IL App (1st) 252052-U

FIFTH DIVISION
June 12, 2026

No. 1-25-2052

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| P-THREE DEVELOPMENT LLC et al, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| | ) | Cook County |
| v. | ) | |
| | ) | No. 2021 L 12175 |
| BARBER LAW OFFICES, et al | ) | |
| | ) | The Honorable |
| Defendants-Appellees. | ) | James E. Hanlon, |
| | ) | Judge Presiding. |
| | ) | |
| | ) | |

JUSTICE WILSON delivered the judgment of the court.
Justices Mikva and Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the circuit court's order granting summary judgment in favor of the defendants.

¶ 2    Plaintiff, Ravi Kadiyala, appeals the circuit court's grant of summary judgment in favor of defendants, Barber Law Offices and Scott Barber (Barber). For the reasons stated, we affirm the judgment of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4      The operative facts are not in dispute. P-Three Development LLC (P-Three)[1] is a Delaware Limited Liability Company formed November 14, 2014, by Kadiyala and John Pressman to purchase a data center in Mt. Prospect, Illinois. P-Three purchased the data center in December 2015. Kadiyala personally guaranteed the repayment of the loan for the purchase. Brown, Udell, Pomerantz & Delrahim (BUPD) represented Kadiyala and P-Three in the purchase and preparation of the documents and leases.

¶ 5      On June 10, 2019, Kadiyala and P-Three retained Barber to prosecute a legal malpractice claim against BUPD. Barber filed suit on behalf of Kadiyala and P-Three, alleging eleven acts of malpractice in BUPD's representation of Kadiyala and P-Three, including that BUPD failed to detect and communicate to Kadiyala changes in documents relating to the purchase, financing and leasing of a piece of commercial real estate. Kadiyala had pre-signed several of the documents ahead of the closing so that the closing could proceed without Kadiyala being present. BUPD later amended some of the documents. Kadiyala claimed that BUPD was professionally negligent in that these changes exposed him to business, financial, and legal risks. He alleged damages of almost $3,000,000.

¶ 6      BUPD filed a section 2-619 (735 ILCS 5/2-619 (West 2018)) motion to dismiss alleging that the case was filed after the expiration of the statute of limitations. BUPD pointed to a May 18, 2017, email between Kadiyala and BUPD where Kadiyala questioned whether he paid twice for equipment he purchased in the original closing. BUPD also argued that Kadiyala and P-Three were aware of their financial injuries on May 4, 2017, when they filed a forcible detainer complaint against Pressman's company EMPTH Holding, for conversion of rent monies that should have

_____

[1] P-Three is not a party to this appeal.

been paid to P-Three. P-Three and Kadiyala argued that Pressman's conversion of the rent payments caused P-Three to default on the loan agreement and triggered Kadiyala's obligation under the guaranty to pay the loan.

¶ 7    On December 6, 2019, the circuit court dismissed the complaint against BUPD with prejudice under section 2-619 (735 ILCS 5/2-619 (West 2018)) concluding that Kadiyala and P-Three were on inquiry notice of their injuries no later than the May 18, 2017, email and therefore their June 10, 2019, legal malpractice complaint was outside of the statute of limitations. The court also rejected Kadiyala's fraudulent concealment claims. The court then also granted BUPD's 2-615 (735 ILCS 5/2-615 (West 2018)) motion to dismiss based on Kadiyala's failure to allege loss causation as to the majority of his damages. The court dismissed Kadiyala's complaint in its entirety with prejudice.

¶ 8    Barber initially agreed to file a notice of appeal from the December 6, 2019, dismissal, but decided against it because the statute of limitations rendered the appeal frivolous. No appeal was filed.

¶ 9    On December 6, 2021, Kadiyala and P-Three filed this malpractice action against Barber for failing to appeal the BUPD dismissal. Over the course of 2022 and 2023, the court addressed various motions, including Barber's motions to dismiss, a motion for judgment on the pleadings, and disputes over affirmative defenses and a counterclaim; portions of these motions were denied and portions allowed, with amendments permitted. The court also entered a series of case-management orders in 2023 and 2024. The parties were required to complete written discovery and depositions, and pursuant to an agreed order entered on May 29, 2024, plaintiffs were required to disclose Supreme Court Rule 213(f)(3) (eff. Jan 1, 2018) expert witnesses by September 17, 2024. Plaintiffs had not disclosed Rule 213(f)(3) witnesses in their July 17, 2023,

interrogatory answers and again disclosed none in supplemental answers served on October 31, 2024.

¶ 10    In mid-2024, Kadiyala and P-Three's counsel withdrew, and Kadiyala continued the litigation *pro se*. During that time, he issued numerous subpoenas to third parties—including BUPD, Pressman, and others—and filed motions to compel responses. In November 2024, he moved to reopen discovery based on documents produced in separate litigation. On January 24, 2025, the trial court denied his request to reopen discovery.

¶ 11    On February 3, 2025, both parties filed motions for summary judgment. Kadiyala argued that Barber's failure to file a timely appeal constituted obvious malpractice that did not require expert testimony and that the appeal would likely have succeeded. Kadiyala further argued that the BUPD court committed reversible error and would have been reversed on appeal had Barber timely filed the appeal. Barber argued that Kadiyala could not establish the required elements of legal malpractice because he had not disclosed expert witnesses to establish the standard of care, breach, or causation, and further argued that plaintiffs could not prove that the underlying BUPD malpractice action would have succeeded or that the BUPD dismissal was erroneous.

¶ 12    On July 21, 2025, the circuit court granted Barber's motion for summary judgment and denied Kadiyala's motion. The court held that Kadiyala's failure to disclose Rule 213(f)(3) experts prevented him from proving the elements of his claim, that they lacked expert evidence to show BUPD deviated from the standard of care or caused damages, and that the underlying BUPD dismissal had been correct. Therefore, Barber was entitled to a judgment as a matter of law.

¶ 13    Kadiyala moved to reconsider, but the motion was denied on September 11, 2025. This appeal followed.

¶ 14                                  II. ANALYSIS

4

¶ 15    Kadiyala contends that the trial court erred in granting summary judgment in favor of Barber on the grounds that he failed to provide expert testimony to support his legal malpractice claim. Kadiyala claims that because the underlying case against BUPD was dismissed on statute of limitations grounds, the proper causation inquiry was whether a timely appeal had a reasonable probability of reversing the dismissal and restoring the case to active litigation, not whether he would have prevailed on the merits. Kadiyala also claims that whether a forfeited appeal had a reasonable probability of success is a mixed question of law and fact, and therefore, summary judgment was improper and should be reversed.

¶ 16    Barber responds that the judgment should be affirmed because Kadiyala failed to disclose any Illinois Supreme Court Rule 213(f)(3) (eff. Jan. 1, 2018) expert witnesses despite a clear court-ordered deadline, and that expert testimony is a mandatory element of a legal-malpractice claim. Barber further argues that Kadiyala could not establish the applicable standard of care, breach, causation, or damages without expert opinion, including expert analysis of whether an appeal would have been successful and whether BUPD's conduct in the underlying transaction deviated from professional norms. Barber further asserts that the BUPD dismissal was substantively correct because Kadiyala was aware of his alleged injuries no later than May 2017, rendering the 2019 malpractice filing untimely. On this basis, Barber argues that summary judgment was warranted as a matter of law.

¶ 17    We begin by noting that we have no transcripts from any hearing date. Illinois Supreme Court Rule 321 (eff. Oct. 1, 2021) and Illinois Supreme Court Rule 324 (eff. July 1, 2017) require an appellant to provide a complete record on appeal, including a certified copy of the report of proceedings. If a verbatim transcript is unavailable, the appellant may file an acceptable substitute, such as a bystander's report or an agreed statement of facts, as provided for in Illinois Supreme

Court Rule 323(c), (d) (eff. July 1, 2017). Supreme Court rules are not mere suggestions; they are rules that must be followed. *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 57. The burden of providing a sufficient record on appeal rests with the appellant and in the absence of such a record, we presume the trial court acted in conformity with the law and with a sufficient factual basis for its findings. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156 (2005); *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) (appellant bears the burden of providing a full record). Furthermore, any doubts arising from an incomplete record will be resolved against the appellant. *Id.* In the absence of such a record, we must (1) presume the trial court acted in conformity with the law and with a sufficient factual basis for its findings and (2) resolve any doubts arising from an incomplete record against the appellant. *Foutch*, 99 Ill. 2d at 391-92. We may affirm the court's judgment on this basis alone.

¶ 18    Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). Summary judgment is a drastic measure and should only be granted when the moving party's right to judgment is "clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). To determine whether there is a genuine issue of material fact, we construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the opponent. *Id.* at 131-32. Unsupported conclusions, opinions, or speculation, however, do not raise a genuine issue of material fact. *Id.* at 132.

¶ 19    Because the parties filed cross-motions for summary judgment, they conceded that no material questions of fact existed and that only a question of law was involved that the court could decide based on the record. *Best Buy Stores, L.P. v. Department of Revenue*, 2020 IL App (1st)

191680, ¶ 12, (citing *Pielet v. Pielet*, 2012 IL 112064, ¶ 28). However, the mere filing of cross-motions for summary judgment does not conclusively establish that there is no issue of material fact, nor is the trial court obligated to enter summary judgment for either party. *Pielet*, 2012 IL 112064, ¶ 28. We review the trial court's decision as to cross-motions for summary judgment *de novo*. *Id*. ¶ 30; see *Outboard Marine*, 154 Ill. 2d at 102 (trial court's entry of summary judgment reviewed *de novo*).

¶ 20   It is well-settled that to state a cause of action for legal malpractice, the complaint must allege facts to establish (1) the defendant owed the plaintiff a duty of due care arising from an attorney-client relationship, (2) the defendant breached the duty, (3) the plaintiff suffered an injury in the form of actual damages, and (4) the breach proximately caused the actual damages. *Petey's Two Real Estate, LLC v. Goedert*, 2024 IL App (1st) 220960, ¶ 32. In a legal malpractice action alleging that an attorney failed to perfect an appeal, the client must prove that he or she would have been successful on appeal if the appeal had properly been perfected. *Governmental Interinsurance Exchange v. Judge*, 221 Ill. 2d 195, 200 (2006) (citing *Environmental Control Systems, Inc. v. Long*, 301 Ill. App. 3d 612, 621 (1998); *Gillion v. Tieman*, 86 Ill. App. 3d 147, 150 (1980) ("To succeed in her malpractice claim, [plaintiff] would have been required to prove damages caused by the defendant's failure to file a timely notice of appeal. To prove damages, she would have to show that an appeal would have been successful.")). Thus, a legal malpractice plaintiff must litigate a "case within a case." See *Governmental Interinsurance Exchange*, 221 Ill. 2d at 200 (quoting *Eastman v. Messner*, 188 Ill. 2d 404, 411 (1999)).

¶ 21   The dispositive issue is whether Kadiyala can establish the case within a case required in this legal malpractice claim arising from Barber's failure to file an appeal. Kadiyala argues that the relevant question is whether reversal of the dismissal of his BUPD case based on the statute of

limitations would have been successful on appeal, not whether he would have prevailed on the merits. Barber argues that Kadiyala is required to prove that he would have been successful on the BUPD appeal if Barber had properly perfected it. Thus, with respect to the BUPD case, Barber contends that Kadiyala was required to prove that the BUPD case was improperly barred as a matter of law by the limitations period and then prove all four elements of his legal malpractice case against BUPD.

¶ 22    We reject Kadiyala's argument that he was not required to prove that he would have prevailed on the merits of the underlying BUPD malpractice action and that it was sufficient to show that a timely appeal had a reasonable probability of reinstating that case. Illinois law does not support such a truncated causation theory. To prove the "case-within-a-case," Kadiyala was required to show that he would have obtained relief in the underlying action but for the attorney's negligence. *Governmental Interinsurance Exchange*, 221 Ill. 2d at 200. As Barber correctly explains, Kadiyala bears the burden of proving not only that the appeal would have succeeded, but that the underlying claim itself was meritorious and would have resulted in a recovery. The loss of a mere opportunity to litigate does not constitute actual damages under Illinois law. See *Eastman v. Messner*, 188 Ill. 2d at 411-12 ("A plaintiff's damages in a malpractice suit are limited to the actual amount the plaintiff would have recovered had he been successful in the underlying case.")

¶ 23    Having clarified the applicable standard, we next address whether Kadiyala produced the expert testimony necessary to establish that the underlying BUPD malpractice claim was viable. In a legal malpractice case "the standard of care against which the attorney defendant's conduct will be measured must generally be established through expert testimony." *Barth v. Reagan*, 139 Ill. 2d 399, 407 (1990). "Failure to present expert testimony is usually fatal to a plaintiff's legal malpractice action." *Id*. "Illinois courts have recognized that where the common knowledge or

experience of lay persons is extensive enough to recognize or infer negligence from the facts, or where an attorney's negligence is so grossly apparent that a lay person would have no difficulty in appraising it, expert testimony as to the applicable standard of care is not required." *Id*.

¶ 24    In the case at bar, Kadiyala failed to identify any expert witnesses to support his malpractice claim against BUPD, despite the trial court extending discovery deadlines multiple times. The parties agreed that Kadiyala would disclose any Rule 213(f)(3) expert witnesses by September 17, 2024. Kadiyala did not disclose any expert witnesses. Even after filing a motion to further extend discovery on November 18, 2024, citing new information, he did not disclose any Rule 213(f)(3) witnesses.

¶ 25    While we agree with plaintiff that expert testimony may not have been necessary to prove legal malpractice against Barber because a fact finder does not require expert explanation to understand that an attorney must file a notice of appeal within the prescribed time when instructed to do so, expert testimony was still required to prove that BUPD committed legal malpractice, causing him a compensable injury. Without expert testimony, Kadiyala could not prove his case within this case- that BUPD deviated from the standard of care in the 2015 transaction or that any deviation proximately caused compensable damages. See *Hatchett v. W2X*, Inc., 2013 IL App (1st) 121758, ¶ 54-55.

¶ 26    Because Kadiyala failed to prove the case within the case, that the BUPD appeal would likely have succeeded, he cannot satisfy the element of proximate causation in this legal malpractice action. Kadiyala offered no expert testimony to establish that BUPD breached the standard of care or caused him compensable harm, and therefore, he could not prove the underlying case. Consequently, his argument fails as a matter of law and therefore, summary judgment in favor of Barber was proper.

¶ 27    Even if Kadiyala is correct in his assertion that the proper causation inquiry was whether a timely appeal had a reasonable probability of reversing the dismissal and restoring the case to active litigation, summary judgment was still proper. A timely appeal would not have successfully reversed the trial court's dismissal as Kadiyala was on inquiry notice in early May 2017.

¶ 28    The two-year statute of limitations applicable to legal malpractice actions incorporates the "discovery rule," which delays the commencement of the statutory period until the injured party knows or reasonably should know facts that would cause him or her to believe that their injury was wrongfully caused. *Brummel v. Grossman*, 2018 IL App (1st) 162540, ¶ 26. Discovery for purposes of the statute of limitations may rest upon so-called inquiry notice, where "[o]nce a party knows, or reasonably should know, both of his injury and that the injury was wrongfully caused, the injured person has the burden to inquire further as to the existence of a cause of action." *Id*.; see also *Pruitt v. Schultz*, 235 Ill. App. 3d 934, 936-37 (1992) (discussing inquiry notice). "There is no requirement that a plaintiff must discover the full extent of his or her injuries before the statute of limitations begins to run." *Hoffman v. Orthopedic Systems, Inc.*, 327 Ill. App. 3d 1004, (2002). "A person knows or reasonably should know an injury is 'wrongfully caused' when he or she possesses sufficient information concerning an injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Carlson v. Fish*, 2015 IL App (1st) 140526, ¶ 23 (quoting *Hoffman*, 327 Ill. App. 3d at 1011). "At that point, the burden is upon plaintiff to inquire further as to the existence of a cause of action." *Hoffman*, 327 Ill. App. 3d at 1011.

¶ 29    The record establishes that Kadiyala and P-Three were on inquiry notice in early May 2017, acted on that duty and made an inquiry to BUPD. It is clear that the statute of limitations had long

passed when Kadiyala and P-Three filed suit against BUPD on June 10, 2019, and thus, there is no probability that the dismissal would have been successful.

¶ 30    Kadiyala's argument that because BUPD fraudulently concealed its negligence it was estopped from asserting the statute of limitations similarly fails. Fraudulent concealment is a statutory exception to the statute of limitations. Section 13-215 of the Code of Civil Procedure states: "If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." 735 ILCS 5/13-215 (West 2022). Under the doctrine of fraudulent concealment, the statute of limitations will be tolled if the plaintiff pleads and proves that fraud prevented discovery of the cause of action. *Henderson Square Condominium Ass'n. v. LAB Townhomes*, LLC, 2015 IL 118139, ¶ 36. Generally, the concealment necessary to toll the statute of limitations must consist of acts or representations that prevent a plaintiff from discovering a viable claim. *Henderson*, 2015 IL 118139, ¶ 38.

¶ 31    Kadiyala offered no evidence of affirmative acts of fraudulent concealment by BUPD that prevented discovery of his claim or delayed the running of the two-year statute of limitations, and the BUPD court correctly found that, even assuming some delay in disclosure, he still possessed nearly two years to timely file suit. "If the claimant discovers the fraudulent concealment, or should have discovered it through ordinary diligence, and a reasonable time remains within the remaining limitations period, section 13-215 will not toll the running of the limitations period." *Smith v. Cook County Hosp.*, 164 Ill. App. 3d 857, 863 (1987); see also *Prospect Development LLC v. Kreger*, 2016 IL App (1st) 150433, ¶ 28 (Internal citation omitted) ("Illinois courts will not apply either the doctrine of equitable estoppel or fraudulent concealment to toll a statute of repose in a case

where the claimant discovers the fraudulent concealment, or should have discovered it through ordinary diligence, and a reasonable time remains within the remaining limitations period.") Because section 13-215 (735 ILCS 5/13-215 (West 2022)) does not toll limitations where the plaintiff learns the relevant facts while ample time remains under the ordinary limitations period, the underlying BUPD dismissal was substantively correct. Summary judgment in favor of Barber was therefore proper.

¶ 32                                    III. CONCLUSION

¶ 33    Based on the foregoing, the judgment of the circuit court granting summary judgment to Barber and denying summary judgment to Kadiyala is affirmed.

¶ 34    Affirmed